OPINION OF THE COURT
Kaye, J.
Personal guarantees issued in connection with loans to a corporation may survive repayment of the corporate indebtedness where the guarantees provide that they are continuing until terminated by written notice. We therefore affirm the order of the Appellate Division upholding summary judgment for respondent, Chemical Bank, in its application of appellants’ personal guarantees to subsequent obligations of the corporation acquired by the bank through assignment.
*292 Appellants Sandy Sepler, David Sepler and Lawrence Roth were officers of Damsel Manufacturing Company (Damsel), a closely held corporation in the apparel business. In June, 1972, in order for Damsel to obtain financing from respondent, each appellant signed a guarantee of Damsel’s obligations to respondent. Those identical instruments provided that they were continuing guarantees of all present and future liabilities of the corporation to respondent, whether created directly or acquired by respondent through assignment; they were to remain in effect irrespective of any interruptions in the business relations of Damsel with respondent, subject to appellants’ right at any time to terminate the guarantees by written notice; and their terms could be modified or waived only in writing. Respondent thereafter extended loans to the corporation.
In March, 1974 Damsel, seeking alternate financing arrangements, entered into an agreement with another lender, United Virginia Factors Corporation. By November, 1975, Damsel had paid off all loans received from respondent, and did not borrow directly from respondent thereafter. Respondent continued, however, to factor accounts receivable for several suppliers of Damsel, and as a consequence the corporation continued to issue checks payable to respondent on those accounts. Between 1975 and 1980, Damsel issued approximately 350 such checks to respondent.
Damsel filed for reorganization under chapter 11 of the Bankruptcy Act (US Code, tit 11) in August, 1980. At the time, the corporation was obligated to respondent for merchandise purchased on credit between April and July, 1980 from three suppliers who had in turn factored their accounts receivable to respondent. In March, 1981, respondent brought suit against appellants to enforce their personal guarantees. Special Term granted respondent’s motion for summary judgment, finding that no written notice of termination had ever been sent by appellants to respondent, and concluding that neither the repayment of the initial loans nor the length of time between that repayment and the transactions eventually giving rise to appellants’ liability served to terminate the guarantees. The Appellate Division affirmed, two Justices dissenting.
*293 Any analysis of appellants’ liability under the guarantees must of course begin with the words of the instruments themselves. Each guarantee provides, in relevant part, as follows:
“NOW THEREFORE, in consideration of the premises and of other good and valuable consideration and in order to induce the Bank from time to time, in its discretion, to extend-or continue credit to the Borrower, the undersigned hereby guarantees, absolutely and unconditionally, to the Bank the payment of all liabilities of the Borrower to the Bank of whatever nature, whether now existing or hereafter incurred, whether created directly or acquired by the Bank by assignment or otherwise, whether matured or unmatured and whether absolute or contingent * * *.
“This guaranty is a continuing guaranty and shall remain in full force and effect irrespective of any interruptions in the business relations of the Borrower with the Bank; provided, however, that the undersigned may by notice in writing, delivered personally to or received by registered mail by, an officer of the Bank at the Bank’s office at 349 Fifth Ave., New York, New York, terminate this guaranty with respect to all Liabilities of the Borrower incurred or contracted by the Borrower or acquired by the Bank after the date on which such notice is so delivered or received.”
We have already held in Chemical Bank v PIC Motors Corp. (58 NY2d 1023, affg 87 AD2d 447, 450), that this form of written guarantee used by respondent is a fully integrated, unambiguous contract which by its terms cannot be modified or varied by parol evidence or by an alleged course of conduct. Here, the guarantees executed by appellants, by their explicit terms, apply to the obligations of Damsel at issue, which were “hereafter * * * acquired by the Bank by assignment.”
While appellants gave no written notice of termination, they nonetheless contend that they should not be liable under the guarantees because no “business relationship” existed after the loans were satisfied, and the guarantees accordingly terminated due to the conduct of the parties, the passage of time, and the fact that there was no continuing consideration to support the continuing guarantees. *294 This contention is at odds with both the terms of the guarantees and the applicable law.
Where, as here, a guarantee is continuing, applicable to after-acquired obligations and terminable only by writing, it may not be said to have terminated due to lack of further consideration, or cessation of what one party may have regarded as the “business relationship.”[1] A single, unlimited, continuing guarantee, supported by consideration given once and for all time, is not automatically terminated by a change in the parties’ relationship. (Corn Exch. Bank Trust Co. v Gifford, 268 NY 153; Associated Food Stores v Siegel, 20 Misc 2d 952, mod on other grounds and affd 10 AD2d 1003, affd 9 NY2d 816; 57 NY Jur, Suretyship and Guaranty, § 130.) Unless the parties to a continuing guarantee provide otherwise in the writing, such a guarantee is not limited to the life of loans executed contemporaneously therewith (National Bank v Dogwood Constr. Corp., 47 AD2d 848, 849), and generally cantiot expire by mere conduct[2] (Chemical Bank v PIC Motors Corp., 87 AD2d 447, 450, affd 58 NY2d 1023, supra), change of circumstances (Associated Food Stores v Siegel, 20 Misc 2d 952, 953, mod on other grounds and affd 10 AD2d 1003, affd 9 NY2d 816, supra), or lapse of time (Travelers Ind. Co. v Buffalo Motor & Generator Corp., 58 AD2d 978, 979). Here, the parties expressly provided that the guarantee would apply to obligations acquired in the future by assignment, and would be continuing “irrespective of any interruptions in the business relations of the Borrower with the Bank”. No clearer showing of intent is required.
Appellants’ final argument is that it would be inequitable to enforce the guarantees. But appellants at all times have had the power to extinguish any perceived inequity: *295 they could simply have served a written termination notice upon respondent. Their failure to do so cannot give rise to an equitable claim.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Meyer and Simons concur.
Order affirmed, with costs.

. Respondent after 1975 regularly acquired Damsel’s debts through factoring, which it points to as a continuation of the business relationship.

. Appellants contend that our decision in Rose v Spa Realty Assoc. (42 NY2d 338), suggests that a contract which by its terms required written notice of termination may be terminated by mere conduct of the parties. This is not so. In Rose, we stated that conduct of the parties may be considered in addressing the validity of an oral modification, “[b]ut only if the partial performance be unequivocally referable to the oral modification is the requirement of a writing under [General Obligations Law] section 15-301 avoided”. (42 NY2d, pp 343-344.) Here, appellants do not allege that there was any oral notice of termination. In the absence of such oral notice, mere conduct is unavailing. (See Associated Food Stores v Siegel, 10 AD2d 1003, affd 9 NY2d 816.)