In Re INTERPICTURES, INC., Interpictures Releasing Corp., Interpictures Licensing Corp., Debtors.

Bankruptcy Nos. 886–61827–18, 886–62079–18 and 886–62117–18.

United States Bankruptcy Court, E.D. New York.

March 22, 1988.

Rosen, Rudd, Felzen, Kera, Graubard & Hollander, by M. David Graubard, New York City, for debtors.

Edward Frey, New York City, trustee.

Eliezer Miller, pro se.

## DECISION

MARVIN A. HOLLAND, Bankruptcy Judge:

These cases, consolidated for administrative and procedural purposes, had been assigned to former Bankruptcy Judge C. Albert Parente. Upon expiration of his term of office they were re-assigned to the undersigned.

At the time of their re-assignment there was pending a proceeding brought on by the court, *sua sponte,* to inquire into the status of one Eliezer Miller to actively participate in these cases; a participation which appears to have risen to the point of animosity between the trustee and debtor's attorney on the one hand and Mr. Miller on the other.

At the first adjourned hearing subsequent to re-assignment, this court terminated this matter without resolution and without prejudice to an appropriate proceeding commenced by a proper party in interest.

Shortly thereafter, Mr. Miller applied for an Order to Show Cause seeking multiple items of relief. That Order to Show Cause was denied on technical grounds; it was then resubmitted in substantially similar form. The proposed Order to Show Cause seeks the following: (a) examination of various entities pursuant to Bankruptcy Rule 2004, (b) removal of fiduciaries, and (c) recovery of assets on behalf of the debtor. This is expressed in the proposed Order to Show Cause in the following wording:

Order to Show Cause seeking:—

1. Diane Bravo, Tilo Rechenbach, M. David Graubard and Alan Marder for violating this court's restraining order of March 11, 1987.

2. Turn-over order for the books, records, files and corporate kits which Graubard admitted in court on March 30, 1987, that he had removed them from the corporate offices on March 20, 1987, during this court's restraining order.

3. To remove Graubard as Debtors' attorney, with sanctions.

4. An order to depose Edward P. Frey, Operating Trustee, under Bankruptcy Rule 2004, to ascertain how he disposed of the library of films valued at ten million dollars and over one thousand distribution agreements which were in the estate as of March 24, 1987 as declared in the Statements of Affairs; also, to ascertain how much of the 7.1 million dollars in receivables were converted using the trustee's offices as a conduit to Massis' privately owned entities, in conspiracy with Alex Massis and Diane Bravo and others.

5. An order removing this trustee under Bankruptcy Rule 1105 on the grounds that his services are no longer necessary nor desired by the creditors and corporate debtors.

6. Turn-over order directing Alex Massis and M.P. Consultants Corp. to return Burroughs computer machine and the unimatic master tape of the Quantel computer and the copyright to the computer software and all other equipment and the books, records and files which he admitted in court on March 30, 1987 that he had taken out on March 20, 1987 during this court's restraining order.

7. Order enjoining Massis from dealing in the corporate debtors' films which were in the estate as of November 6, 1986, and rendering his fifteen million nine hundred sixty-three thousand shares of common stock of Interpictures Inc. as non-voting stock for his interests are contrary and detrimental to the corporate debtors.

8. Order to depose Frans J. Afman, Lee Steiner, Maurice Silverstein and Leonard Greunberg who instituted a petition of involuntary bankruptcy against Interpictures Inc. on November 6, 1986 on a friendly basis and perpetrating a conspiratorial bankruptcy fraud, knowing Interpictures Inc. had no dealings with any of them and their sole intention was to defraud me of my 28.4% of Interpictures, Inc.

9. An order directing Credit Lyonnais Bank N.Y. to give an accounting of the monies they received since November 6, 1986 from foreign receivables to the present.

10. An order to depose Brian P. Bonald, Assistant Vice–President and Mr. Finn of Credit Lyonnais, New York Branch, under Rule 2004, to determine the extent of the diversion of corporate funds into foreign bank accounts.

11. An order for evidentiary hearing of the former officers and directors to ascertain the extent of the diversion of the company's assets and corporate receivables and into which of Massis' privately owned entities, foreign and domestic, such as those found by the trustee in the corporate offices on March 27, 1987, namely the Essex Corporation, Isram Film Corporation, a Cayman Island account and International Marketing Corporation which has a Cayman Island bank account and a French Bank account, and the Ampersand Corporation.

12. An order for depositions under Rule 2004 of Justin Manus Esquire, who is an officer of Isram and International Marketing Corporation, to disclose foreign bank accounts of Interpictures, Inc.

For the reasons hereinafter set forth, the application is denied.

The former proceedings in this case had been punctuated with contested assertions made by Mr. Miller's adversaries that issuance of his Interpictures stock was invalid and therefore did not entitle him to exercise the rights and privileges normally incidental to stock ownership, including his active participation in this case. For purposes of this discussion only, this court assumes the validity of stock certificates No. 7 and 8, for seven million, eight hundred and seven thousand and one hundred

thousand shares of common stock respectively in the name of Eliezer Miller, copies of which are a part of his moving papers. Such certificates are not, however, sufficient to entitle Mr. Miller to the Order to Show Cause he seeks.

■ The term "case or controversy" upon which the constitution predicates the judicial power of the United States' courts mandates that judicial intervention and activity be invoked only by a party in interest. Parties in interest are "'those persons whose rights or interests are "directly and adversely affected pecuniarily".'" *In re Dein Host, Inc.*, 835 F.2d 402, 405 (1st Cir.1987) *quoting In re El San Juan Hotel*, 809 F.2d 151, 154–55 (1st Cir.1987), with certain minor exceptions not herein relevant.

As aptly stated by the First Circuit in *In re Dein Host, Inc., supra* at 405–406:

"The fact that the injury may indirectly harm a stockholder by diminishing the value of his corporate shares does not bestow upon him a right to sue on his own behalf." *Papilsky v. Berndt*, 466 F.2d 251, 255 (2d Cir.), *cert. denied*, 409 U.S. 1077, 93 S.Ct. 689, 34 L.Ed.2d 665 (1972). The Third Circuit has phrased the principle as follows:

'A stockholder of a corporation does not acquire standing to maintain an action in his own right, as a shareholder, when the alleged injury is inflicted upon the corporation and the only injury to the shareholder is the indirect harm which consists in the diminution in value of his corporate shares resulting from the impairment of corporate assets. In this situation, it has been consistently held that the primary wrong is to the corporate body and, accordingly, that the shareholder, experiencing no direct harm, possesses no primary right to sue.'

*"Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 732 (3d Cir.1970) (citations omitted), *cert. denied*, 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971). The Eighth Circuit has put it bluntly and well:

'Actions to enforce corporate rights or redress injuries to the corporation cannot be maintained by a stockholder in his own name ... even though the injury to the corporation may incidentally result in the depreciation or destruction of the value of the stock.' *"Brictson v. Woodrough*, 164 F.2d 107, 109 (8th Cir.1947) (footnotes omitted), *cert. denied*, 334 U.S. 849, 68 S.Ct. 1500, 92 L.Ed. 1772 (1948). *See also Ash v. IBM*, 353 F.2d 491, 493–94 (3d Cir.1965) (harm to corporation, impairing value of one's shares, does not make stockholder a person "injured in his business or property" so as to confer standing for Clayton Act purposes), *cert. denied*, 384 U.S. 927, 86 S.Ct. 1446, 16 L.Ed.2d 531 (1966). .... Even a *sole* shareholder acquires no personal cause of action because of an injury—real or threatened—to the corporation. *See e.g., Green v. Victor Talking Machine Co.*, 24 F.2d [378] at 380 [2d Cir., 1928]. *See also Henry v. General Motors Corp.*, 236 F.Supp. 854, 856–57 (N.D.N.Y.) (principal shareholder), *aff'd* 339 F.2d 887 (2d Cir.1964) (per curiam).

"The rule is a salutary one: if a shareholder, dissatisfied with the dealings entered into between his corporation and a third party, automatically possessed a personal right of action against the third party, then corporations would be paralyzed. They could rarely act except upon unanimous consent. Business affairs would slow to a crawl, and the courts, confronted with a bewildering myriad of shareholder claims, would be as busy as a colony of centipedes with athlete's foot. Not surprisingly, the law is to the contrary. As Justice Holmes once stated, "[a] leading purpose of [the corporation code] is to interpose a nonconductor, through which in matters of contract it is impossible to see the men behind." *Donnell v. Herring–Hall–Marvin Safe Co.*, 208 U.S. 267, 273, 28 S.Ct. 288, 289, 52 L.Ed. 481 (1908). The corollary to the practical invisibility of "the men behind" is their inability unilaterally to arrogate unto themselves choses in action which belong to the firm. Thus, the prospect of economic harm to an incorporated

business does not, in and of itself, "constitute[ ] justiciable personal injury to each owner of stock in the corporation." *Kauffman*, 434 F.2d at 733.

■ Our Circuit Court of Appeals and district courts within this Circuit have uniformly held that where a corporation is wronged by the acts of others, it is the corporation, not the individual shareholders, who possesses the cause of action. *Green v. Victor Talking Machine Co.*, 24 F.2d 378 (2d Cir.1928), *cert. denied* 278 U.S. 602, 49 S.Ct. 9, 73 L.Ed. 530 (1928); *Accord, Rand v. Anaconda–Ericsson, Inc.*, 794 F.2d 843, 849 (2d Cir.1986) *cert. denied* — U.S. ——, 107 S.Ct. 579, 93 L.Ed.2d 582; *Vincel v. White Motor Corp.*, 521 F.2d 1113 (2d Cir.1975) (where the court found plaintiff-stockholder to lack standing to bring an action in his own right for anti-trust violations causing corporate injury); *Saxe, Bacon & Bolan, P.C. v. Martindale–Hubbell, Inc.*, 521 F.Supp. 1046 (S.D.N.Y.1981), *aff'd*, 710 F.2d 87 (2d Cir.1983). This is so even though shareholders may allege that the value of their stock has been impaired by injury to the corporate assets. *Pittsburgh & W.Va. Ry. Co. v. United States*, 281 U.S. 479, 487, 50 S.Ct. 378, 381, 74 L.Ed. 980 (1930).

The manner in which a Title 11 proceeding impacts upon this doctrine, however, requires further analysis.

■ In the ordinary situation, where the corporation does not act to redress its own wrongs (usually because the wrongdoers exercise a sufficient degree of control to prevent it) the stockholders are given a right to sue. This suit, however, is brought not in their own name, but rather in the name and right of the corporation. The stockholder is in effect "allowed to conscript the corporation as a complainant on a claim that the corporation, in the exercise of what it asserts to be uncoerced discretion, is unwilling to initiate." *Smith v. Sperling*, 354 U.S. 91, 99, 77 S.Ct. 1112, 1119, 1 L.Ed.2d 1205 (1957) (Frankfurter, J. dissenting).

■ In an insolvency situation, however, the right to redress wrongs inflicted upon the debtor is property of the estate. 11 U.S.C. § 541. Any attempt therefore to exercise derivatively those rights which belong exclusively to the corporate debtor would run afoul of 11 U.S.C. § 362(a)(3) which prohibits "any act to ... exercise control over property of the estate."

Two additional problems remain which do not appear to have been raised directly, at least in any reported case which this court has been able to locate. First, the stricture limiting federal judicial jurisdiction to "cases and controversies" applies only to Article III courts. Since the Bankruptcy Court is not such a court, is not Congress free to give any entity standing to appear and be heard? Second, 11 U.S.C. § 1109(b) states that "... an equity security holder [such as Mr. Miller] ... may raise and may appear and be heard on any issue in a case under this chapter." These problems, however, disappear with an analysis of the recent history of Bankruptcy Court jurisdiction.

While a Bankruptcy Court is not an Article III court and while aspects of "judicial power of the United States" (U.S. Constitution, Article III) are therefore denied to it, it does not follow that the Bankruptcy Court's jurisdiction is free of "case or controversy" and party-in-interest constraints.

■ Judges of the Bankruptcy Court are not Article III judges. They are not presidential appointees, and do not possess Article III attributes: immunity from salary diminution and life tenure subject to removal by impeachment only. The 1984 amendments provide that Bankruptcy Court jurisdiction is derived only from, through and under the District Court which passes certain of its jurisdiction to the Bankruptcy Court by virtue of the District Court's reference of the case. That is, the Article III District Courts are given exclusive jurisdiction and control over bankruptcy cases (*see* 28 U.S.C. § 1334(a)) and are authorized but not required to refer these cases to an Article I Bankruptcy Court subject to the District Court's right to withdraw that reference. *See* 28 U.S.C. § 157(d). Only after the case is so referred, is the Bankruptcy Court given juris-

diction to hear core proceedings, and issue final judgments subject to traditional appellate review, (*see* 28 U.S.C. § 158) and issue final orders in "related to" matters with the express consent of the parties, (*see* 28 U.S.C. § 157(c)(1)). What is clear from the 1984 amendments is that such limited jurisdiction as is given to the Bankruptcy Court is exercised only by virtue of a referral from the District Court: without District Court referral, the Bankruptcy Court is not empowered to exercise jurisdiction over any aspect of a bankruptcy case.

■ Since the jurisdiction which Congress constitutionally grants to the District Court is limited to "cases and controversies" and since the District Court cannot pass on to this court that which the District Court did not have (i.e., jurisdiction outside of cases and controversies), it becomes clear that although the Bankruptcy Court does not enjoy all of the powers and immunities of the District Court, it is nevertheless subject to all of the jurisdictional limitations and restraints which the Constitution imposes upon an Article III court.

■ As indicated above, Mr. Miller has no direct rights. Since his only rights are derivative, and since the exercise of such derivative rights would violate the stay imposed by 11 U.S.C. § 362(a), Mr. Miller is not entitled to the relief which he now seeks.

■ Regarding the examinations sought by Mr. Miller pursuant to Bankruptcy Rule 2004, subdivision (a) of that rule authorizes such examination on motion of "any party in interest." As indicated, Mr. Miller not being a party in interest is not entitled to move for this type of examination. Furthermore, it is apparent from the application that Mr. Miller seeks the examination not so much to discover the existence of assets on behalf of the debtor, but rather for the purpose of discovery in a pending or proposed proceeding. Even were Mr. Miller a party in interest, the examination he seeks is beyond the scope of Bankruptcy Rule 2004 and must be pursued pursuant to proper discovery.

■ Additionally, the turnover and recovery of assets sought in the proposed Order to Show Cause must be brought pursuant to Bankruptcy Rule 7001 in an adversary proceeding properly commenced by a party in interest. This portion of the remedy sought is not the proper subject of an Order to Show Cause and is therefore procedurally defective.

This court notes that the application accompanying the proposed Order to Show Cause alleges very serious breaches of fiduciary duty, violation of criminal laws, and disobedience of lawful court orders. The denial of Mr. Miller's Order to Show Cause is therefore without prejudice to his moving to vacate the automatic stay imposed by 11 U.S.C. § 362 so as to obtain leave to commence appropriate plenary proceedings in one or more courts of competent jurisdiction. Since such proceedings are not pending before this court, we are not presently called upon to determine the extent to which the jurisdiction of this court may or may not extend to such proceedings.

In order to enable Mr. Miller, in the event that an appeal is taken from this order, to move for a stay in the appellate court without the further necessity of making such a motion first in this court, we deem such motion to have been made and deny it for lack of likelihood of success upon appeal for the reason, among others, that the order appealed from is interlocutory rather than final. *See Matter of Greene County Hospital*, 835 F.2d 589 (5th Cir.1988); 28 U.S.C. § 1291.

SO ORDERED.