In re Joe W. PRIESTLEY, SS#
512–09–5389, Debtor.

Steve H. MAZER, Trustee, Plaintiff,

v.

John R. BYRD and Barbara Lee
Byrd, Defendants.

Bankruptcy No. 7–83–01412 MA.
Adv. No. 87–0360 M.

United States Bankruptcy Court,
D. New Mexico.

Dec. 15, 1988.

Steve H. Mazer, Albuquerque, N.M., for plaintiff.

Elvin Kanter, Albuquerque, N.M., for defendants.

## MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

This matter came before the Court for trial on the merits of trustee's complaint to avoid post-petition transfer. Defendant is debtor's daughter. In his complaint trustee sought the return of some $55,000 paid to the defendant or for her benefit after the bankruptcy petition was filed that he alleged was paid in violation of Title 11. For the reasons set forth in this memorandum opinion the Court will enter judgment in favor of plaintiff for $35,775.00.

## FACTS

Debtor filed a voluntary chapter 11 proceeding in 1983. At this time he owned 73 shares of JOMA Corporation.[1] Sixty-six other shares were outstanding at all times material herein: defendant Barbara Byrd, 33 shares; defendant Barbara Byrd as

---

1. Actually the shares were owned by the Joe W. and Mary Lee Priestley Revocable Trust; trust assets were later held to be estate property. *See* Orders entered February 16, 1984, April 3, 1984, and March 19, 1985. *See also* First Amended Schedule B–2 filed April 5, 1984, which includes Trust assets.

trustee for her children, 32 shares; and debtor's wife, 1 share. Debtor was president of JOMA. Its board of directors consisted of the debtor, his wife, and the defendant.

JOMA has a November fiscal year. In the year ending November 30, 1986 JOMA issued the following checks to or for the benefit of defendant:

|  | Number | Date | Amount |
|---|---|---|---|
| Exhibit 2 | 1141 | 1–20–86 | $ 300.00 |
|  | 1165 | 7–7–86 | 1,500.00 |
|  | 1175 | 7–17–86 | 1,000.00 |
|  | 1183 | 8–7–86 | 1,000.00 |
|  | 1193 | 8–20–86 | 500.00 |
|  | 1194 | 8–20–86 | 300.00 |
| Exhibit 3 | 1147 | 3–7–86 | 200.00 |
| Exhibit 4 | 1205 | 9–16–86 | 125.00 |
|  | 1213 | 10–16–86 | 125.00 |
|  | 1221 | 11–10–86 | 125.00 |
|  | 1155 | 6–27–86 | 600.00 |
|  |  |  | $5,775.00 |

During the fiscal year ending November 30, 1987 JOMA issued the following checks to or for the benefit of defendant:

|  | Number | Date | Amount |
|---|---|---|---|
| Exhibit 1 | Cashier's Check | 12–31–86 | $30,000.00[2] |
| Exhibit 2 | 1340 | 3–25–87 | 200.00 |
| Exhibit 3 | 1245 | 1–7–87 | 200.00 |
|  | 1314 | 2–28–87 | 200.00 |
|  | 1356 | 5–1–87 | 200.00 |
|  | 1389 | 7–15–87 | 200.00 |
| Exhibit 4 | 1248 | 1–22–87 | 125.00 |
|  | 1308 | 2–18–87 | 125.00 |
|  | 1319 | 3–11–87 | 125.00 |
|  | 1348 | 4–13–87 | 125.00 |
|  | 1347 | 6–11–87 | 125.00 |
|  | 1388 | 7–15–87 | 125.00 |
|  |  |  | $31,875.00 |

JOMA's accountant testified that throughout the period covered by these checks he was aware only of the $30,000.00 cashier's check to defendant, and that all checks pre-dating the cashier's check would have been included in the "due from Joe Priestley" account on the books. Therefore, in substance the debtor was borrowing funds from JOMA and directing JOMA to remit those funds to or for the benefit of his daughter.

The accountant next testified that the $30,000.00 check was intended to be a dividend to the defendant, to distribute JOMA's corporate earnings to her. The Court does not believe this testimony.

First, no other shareholders participated in this alleged dividend. Second, the 1986 year end adjusting entries in evidence does not reflect that any dividends had been declared. Rather, adjustment 3, which deals with the sale of the corporate property that generated the funds from which defendant was paid, shows an increase in the "due from Joe Priestley" account of $50,564.42.[3] Therefore the corporate books treated her payment as a loan to the debtor.

Third, it is clear that there had been no directors meeting at which a dividend had been declared. Finally, although debtor attempted at trial to convince the Court that all payments were dividends, his prior deposition testimony indicates otherwise:

Q. Why did she receive $30,000?

A. Because I owed her money,

Q. How much money did you owe her?

A. A little over $50,000.

Q. You personally owed her that money?

A. My trust and myself did, yes.

Q. And JOMA Corporation paid it?

A. Yes, sir.

*Deposition of September 29, 1987* at 119, and

Q. You owed her this money on the date that the petition was filed?

A. Yes, sir, it was filed in the Court.

Q. And since you had some money ... you decided that you would pay her?

A. Try to pay all my debtors. (sic)

---

2. Although paid to her during the 1987 fiscal year the check was part of a transaction accrued on JOMA's books as of November 30, 1986.

3. The Court has been unable to reconcile the exact components of this figure. The debtor did not receive the closing documents from the sale, *see Deposition of September 29, 1987* at 109, but recalled that he received approximately $18,000. *Id.* The defendant received $30,000.00. *Id.* at 107. Adjustment 2 and 5 reflect that the receivable was reduced by $1,533 to reflect other items at closing. In any event, the record is clear that the $30,000 payment was treated as a loan to the debtor on JOMA's books.

Q. And Barbara Byrd came first because she was related to you?

A. Well not necessarily. It was a debt that I owed and I had the money to pay it, so I paid it.

*Id.* at 120.

Therefore, the Court finds that all payments during JOMA's 1986 fiscal year, totalling $5,775.00, and the subsequent $30,-000.00 payment were all loans to the debtor that he caused to be paid to or for the benefit of defendant.

While the record reflects that another $1,875.00 was paid to or for the defendant during JOMA's 1987 fiscal year no testimony was presented on how these payments were treated. Therefore the Court cannot find that these payments represented further loans to the debtor.

DISCUSSION

■ Trustee seeks a judgment under 11 U.S.C. § 549 avoiding a post petition transfer of property of the estate that was unauthorized by Title 11 or the Court. He argued three theories for recovery: first, that the transfers were of "property of the estate", which defendant contests; second, that if the payments were dividends they reduced the value of JOMA shares held by the estate and he should therefore recover for the diminution; third, that JOMA is only an alter ego of the debtor and that, therefore, the payments were of property of the estate. The Court agrees with trustee's first argument and does not need to discuss the other two.[4]

The Court finds that the $35,775 transferred was property of the estate. JOMA loaned this money to the debtor. The fact that JOMA paid the funds directly to defendant or for her benefit is not relevant. The record is clear that JOMA treated the advances as loans to the debtor and would hold him liable for repayment. Under 11

U.S.C. § 541(a)(7) funds loaned to a debtor-in-possession become estate property.

Although not argued by defendant, the Court has considered the possible defense that the funds transferred represent post-petition earnings of the debtor. Under this theory § 541(a)(6) would operate to remove them from the estate. *See e.g. In re Fitzsimmons*, 725 F.2d 1208, 1211 (9th Cir. 1984) (Post-petition personal services earnings of chapter 11 debtor are not estate property.) JOMA's 1986 adjusting entries demonstrate that all amounts "due from Joe Priestley" were converted to management fees at year end. Management fees would, arguably, be personal service income and not estate property. The record is clear, however, that when the funds were advanced JOMA treated the advances as loans. When the debtor caused JOMA to make the advances he was borrowing from JOMA. Funds borrowed post-petition are estate property in chapter 11. Only later, by forgiving these loans, did JOMA cause income to be generated. Therefore, the income was the repayment of the loans, not the initial funding of those loans. Furthermore, the Court would be reluctant to be bound by JOMA's characterization of the transfers as earned income. First, the accountant testified that the entire receivable was charged off as management fees to reduce corporate tax liability. Therefore the fees do not represent the fair value of services rendered, rather, they represent the amount that the debtor borrowed. This is especially true in light of testimony that the corporation had been mostly inactive for two years. Second, the debtor dominates JOMA. To allow him to characterize JOMA's transactions would allow him to remove assets from the estate as he wished, to the detriment of creditors. Therefore, the Court finds that the

---

4. The Court questions, however, whether the trustee would have standing to pursue his relief under his second theory. *See In re Interpictures, Inc.,* 86 B.R. 24, 27–28 (Bankr.E.D.N.Y. 1988) and cases cited therein. (Injury to the value of stock does not give stockholders a right to sue on own behalf.)

The Court also doubts whether it could pierce JOMA's corporate veil when JOMA and all of its stockholders have not been named as parties. *Compare Eisenberg v. Casale (In re Casale*), 72 B.R. 222 (E.D.N.Y.1987) (In a fact pattern similar to this case Court pierced corporate veil; defendants in case were debtor, the transferee, the corporation itself, and its 100% stockholder.)

**198**

§ 541(a)(6) exception for personal services earnings would not defeat trustee's claims.

Finally, the Court finds that the transfers in question were not authorized by Title 11. Either they were post-petition gifts to an insider or were post-petition repayments of pre-petition unsecured debt. Neither is authorized by Title 11.

This memorandum opinion constitutes the Court's findings of fact and conclusions of law. Bankruptcy Rule 7052. An appropriate order shall enter.