**FIRST NEW YORK BANK FOR BUSINESS, Plaintiff,**

v.

**Nicholas DeMARCO, Judith DeMarco, John J. Oddo and Livia C. Oddo, Defendants.**

**No. 89 Civ. 5000 (RO).**

United States District Court, S.D. New York.

May 15, 1991.

Hahn & Hessen, New York City (T. Gorman Reilly, Maria A. Arnott, of counsel), for plaintiff.

Henkoff, Kessler, Siegel & Greenberg, New York City (Isaac Henkoff, of counsel), Klein Chapman, Clifton, N.J. (Leonard Peduto, of counsel), for defendants.

## OPINION AND ORDER

OWEN, District Judge:

Plaintiff First New York Bank for Business[1] entered into a financing arrangement with Leonard Gold Co., Inc., of which defendants Nicholas DeMarco and John Oddo were the President and Secretary, respectively. Between February 8, 1988 and July 14, 1989 the bank extended credit, in varying amounts, to Leonard Gold, secured by the company's personal property,

---

1. The bank was formerly, and throughout the period of the transactions herein discussed, known as The First Women's Bank.

chiefly its accounts receivable, and guaranteed by two written unconditional guaranties, one executed by Nicholas DeMarco and his wife Judith DeMarco and one executed by John Oddo and his wife Livia Oddo. On July 14, 1989 Leonard Gold went out of business and the bank demanded payment of Leonard Gold's debts. Leonard Gold failed to pay and subsequently went into bankruptcy. The bank demanded payment under the guaranties by the DeMarcos and the Oddos, who also failed to pay. First New York filed this action to recover $1,652,122.32 which it claims is owed by Leonard Gold and guaranteed by defendants. First New York now moves for summary judgment on the ground that the express terms of the guaranties provide for defendants' payment of Leonard Gold's debts. First New York moves to strike defendants' affirmative defenses and counterclaims on the grounds that they fail to state a claim and that defendants lack standing to assert the counterclaims as these claims, if they exist, belong to Leonard Gold and may not be claimed by the guarantors.

The following facts are undisputed by the parties. Plaintiff First New York is a banking corporation engaged in the business of commercial banking. Leonard Gold is a New York Corporation which, until July 14, 1989, was engaged in the business of converting textile piece goods. On February 8, 1988 First New York entered into a secured loan agreement with Leonard Gold whereby the bank agreed to extend to Leonard Gold a $2,500,000 line of credit. In connection with the loan transaction Leonard Gold executed and delivered to First New York a written security agreement, dated February 8, 1988 whereby Leonard Gold granted First New York a security interest in all its personal property including its accounts receivable and chattel paper. On February 17, 1988 Leonard Gold executed and delivered to First New York a Grid Promissory Note in the principal sum of $2,500,000. Pursuant to a Factoring Agreement dated September 22, 1986, certain accounts receivable of Leonard Gold were factored by BancBoston Financial Company. By an Assignment of

Factors Credit Balances dated February 10, 1988, Leonard Gold assigned to First New York all of Leonard Gold's rights to receive sums due Leonard Gold pursuant to the Factoring Agreement. Subsequent to these transactions, First New York made various loans to Leonard Gold. First New York advanced monies to Leonard Gold based upon a formula (to determine the availability of funding under the line of credit), lending 90% against eligible factored receivables and 80% against eligible non-factored receivables retained by Leonard Gold. Pursuant to the borrowing arrangement between the bank and Leonard Gold, Leonard Gold's ability to borrow funds against its line of credit was contingent upon and limited by the availability of sufficient accounts receivable. For every dollar of accounts receivable, Leonard Gold could borrow 90 cents against its line of credit for factored receivables and 80 cents for non-factored receivables.

In June 1988, Leonard Gold's line of credit was increased from $2.5 million to $3 million with advances equal to 85% of all eligible accounts receivable (factored and non-factored) under 90 days. The line of credit also provided for a $500,000 overadvance for the period from October through March (to accommodate seasonal needs of Leonard Gold), which allowed Leonard Gold to borrow up to $500,000 in excess of the amount calculated in accordance with the 85% formula, subject to the $3 million line limit. The amount of the overadvance was to be decreased to $100,000 by March 31, 1989. On October 6, 1988, in connection with the increase in the line of credit, Leonard Gold executed and delivered to First New York a second Grid Promissory Note in the amount of $3,000,000. On December 6, 1988, when the line of credit was renewed by First New York, Leonard Gold executed and delivered to first New York a third Grid Promissory Note in the amount of $3,000,000.

As of April 1, 1989 Leonard Gold had not reduced the amount of the overadvance from $500,000 to $100,000 and consequently was out of compliance with the lending formula. In late May 1989, First New

York established a "cash collateral account" into which all receivables and collections of Leonard Gold were deposited and out of which certain approved business expenses were paid. On May 31, 1989 Leonard Gold executed a Floating Rate Promissory Note, in the amount of $3,000,000, due and payable in full on June 30, 1989. In June 1989 Leonard Gold authorized BancBoston to transfer by wire all funds collected in excess of $25,000 to the cash collateral account. On June 14, 1989 BancBoston notified Leonard Gold that authorized charge backs amounting to approximately $396,000 had gone through, which had not previously been reflected in statements provided to First New York. On July 14, 1989 Leonard Gold was unable to meet its payroll and ceased operation.

By letter dated July 14, 1989 First New York made written demand on Leonard Gold for payment of its debts and obligations. Leonard Gold has never paid these debts. On August 1, 1989 an involuntary petition for bankruptcy was filed against Leonard Gold by its creditors. A trustee was appointed, and the Southern district of New York Bankruptcy Court has jurisdiction over the assets and property of Leonard Gold.

When First New York entered into the financing arrangement with Leonard Gold on February 8, 1988, Nicholas DeMarco and his wife Judith DeMarco and John Oddo and his wife Livia Oddo executed and delivered to First New York personal written unlimited guaranties whereby defendants absolutely and unconditionally guaranteed to First New York payment in full of all of Leonard Gold's liabilities to First New York. The guaranties signed by the DeMarcos and the Oddos state:

> [T]he undersigned irrevocably, absolutely and unconditionally guarantee to the Bank payment when due, whether by acceleration or otherwise, of any and all liabilities of the Borrower [Leonard Gold Co. Inc.] to the Bank, together with all interest thereon and all attorney's fees, costs and expenses of collection incurred by the Bank in enforcing any of such liabilities.

The guaranties also contain a clause which states,

> [n]o validity, irregularity or unenforceability of this guaranty, of all or any part of the liabilities hereby guaranteed (or any agreement or instrument relating thereto) or of any security therefor, nor any circumstances which might constitute a defense available to a guarantor in respect of a guaranty, shall affect, impair or be a defense to this guaranty, and this guaranty is an absolute and unconditional primary obligation of the undersigned.

Finally, the guaranties state, "[t]he undersigned, if more than one, shall be jointly and severally liable hereunder ..."

By letters dated July 14, 1989, First New York made written demand on the DeMarcos and the Oddos for payment of all debts and obligations owed by Leonard Gold to First New York. Defendants have failed to make payment on these guaranties.

■ In opposing First New York's action to enforce the guaranties, defendants do not dispute the existence of the guaranties or the fact that the guaranties have not been paid. Neither do they dispute the existence of outstanding debts owed by Leonard Gold to First New York. Rather, defendants raise affirmative defenses that the guaranties are unenforceable because they are unconscionable and against public policy. Defendants do not submit affidavits or other admissible evidence in support of the claim of unconscionability. Instead, defendants merely argue in their brief that circumstances surrounding the signing of the guaranties by Judith DeMarco and by Livia Oddo were unconscionable because the wives of the corporate officers were unsophisticated, non-business people. Defendants assert that the wives lacked understanding of the contract language and were in a position of unequal bargaining power such that they did not have a meaningful choice whether or not to sign the guaranties.

■ I find absolutely no support for defendants' claims that the guaranties were unconscionable in the record, through affidavit or otherwise, and I find the argument

incredible in light of the fact that the guaranties were co-signed by Nicholas DeMarco and John Oddo who, defendants concede, were knowledgeable businessmen. Indeed, at the hearing on this motion, counsel for First New York represented, and defendants did not dispute, that the documents were submitted to the husbands who took them home over the weekend to be signed. Unconscionability requires some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. *See Matter of State of New York v. Avco Financial Service of New York,* 50 N.Y.2d 383, 429 N.Y.S.2d 181, 185, 406 N.E.2d 1075, 1078–79 (1980).[2] Defendants make no such showing.

■■■ Similarly, defendants fail to make any showing that these guaranties were against public policy. Absolute and unconditional guaranties such as those executed by defendants are consistently upheld by New York courts. *See e.g., Citibank, N.A., et al. v. Plapinger,* 66 N.Y.2d 90, 495 N.Y.S.2d 309, 485 N.E.2d 974 (1985); *Chemical Bank v. Sepler,* 60 N.Y.2d 289, 469 N.Y.S.2d 609, 457 N.E.2d 714 (1983); *Federal Deposit Ins. Corp. v. Schwartz,* 78 A.D.2d 867, 432 N.Y.S.2d 899 (2d Dept. 1980), *aff'd,* 55 N.Y.2d 702, 447 N.Y.S.2d 136, 431 N.E.2d 621 (1981). Indeed, unconditional guaranties have been held to foreclose, as a matter of law, guarantors from asserting any defenses or counterclaims. *See Plapinger,* 495 N.Y.S.2d at 310, 485 N.E.2d at 975. Furthermore, a claim that a guarantor was unaware of the legal ramifications of the execution of the guaranty is insufficient to prevent enforcement of a guaranty. *See e.g. Scarsdale National Bank and Trust Co. v. S.E.W. Productions, Inc. et al.,* 151 A.D.2d 657, 542 N.Y.S.2d 717 (2d Dept.1989); *Marine Midland Bank, N.A. v. Idar Gem Distributors, Inc.,* 133 A.D.2d 525, 519 N.Y.S.2d 898, 899 (4th Dept.1987). These guaranties, typical of those executed by banks in the course of commercial loan transactions, are enforceable and do not violate public policy. As defendants have failed to submit any evidence raising triable issues of fact, *see Schwartz,* 447 N.Y.S.2d at 136, 431 N.E.2d at 621, defendants' first and second affirmative are stricken and the matter may properly be disposed of on summary judgment.

■■■ Defendants also raise the affirmative defense that plaintiff's claims are barred because of failure of consideration. The guaranties state that they are undertaken "[i]n consideration of financial accommodations given or to be given to Leonard Gold ... by [First New York]." The initial $2,500,000 line of credit, as well as subsequent extensions of credit by the bank to Leonard Gold constitute clear consideration for defendants' guaranties. Consideration passing from a creditor to a principal obligor is sufficient consideration to support a third-party guaranty of the principal obligor's debts. *See Walter E. Heller & Co. Inc. v. Cox,* 343 F.Supp. 519, 527–28 (S.D.N.Y.1972), *aff'd,* 486 F.2d 1398 (2d Cir.1973). Moreover, because the guaranties expressly state that they are given in consideration of future financing provided by the bank to Leonard Gold, defendants are bound for future obligations when incurred by the Leonard Gold. *See Sepler,* 60 N.Y.2d 289, 469 N.Y.S.2d 609, 457 N.E.2d 714. Furthermore, the loans to Leonard Gold benefited both Nicholas DeMarco and John Oddo, the sole shareholders and officers of Leonard Gold, as well as their wives Judith DeMarco and Livia Oddo who enjoy the fruits of their husbands livelihood. Defendants have failed to present evidence to raise an issue of fact with regard to consideration and thus, defendants' affirmative defense based on lack of consideration is stricken.

■■■ Turning to defendants' counterclaims, defendants claim that between May and July of 1989 the bank became actively involved in the management of Leonard Gold's accounts receivable and cash dis-

**2.** New York law applies in this case as each guaranty provides, "[t]his guaranty and the rights and obligations of the Bank and of the undersigned hereunder shall be governed and construed in accordance with the laws of the State of New York."

bursements, and while in this position of control, the bank interfered with Leonard Gold's attempts to complete a sale of its assets, compromised the collateral of the company, and prevented Leonard Gold from meeting its payroll obligations to its employees, thereby bringing about the financial collapse and bankruptcy of the company and creating a situation in which Leonard Gold was unable to repay its debts. These allegations assert harm to Leonard Gold and thus, any claims, if they exist, belong to Leonard Gold itself, and defendants, as guarantors, lack standing to assert them as either defenses or counterclaims. *See Banco Portugues do Atlantico v. Asland,* 745 F.Supp. 962, 972 (S.D.N.Y.1990); *Citizens Fidelity Bank and Trust Co. v. Coulston Int'l Co.,* 160 A.D.2d 1110, 553 N.Y.S.2d 901, 902 (App. Div.1990); *Walcutt v. Clevite Corp.,* 13 N.Y.2d 48, 241 N.Y.S.2d 834, 191 N.E.2d 894 (1963). Although certain exceptions exist to the rule that a guarantor may not raise claims of its principal, where that principal is controlled by the guarantors, as in the case where the guarantors are the directors and sole shareholders of a closely held corporate principal, *see Bloor v. Shapiro,* 32 B.R. 993, 1101 (S.D.N.Y.1983); *Walcutt,* 241 N.Y.S.2d at 839, 191 N.E.2d at 897–98, such exception does not apply where, as here, the principal is bankrupt and is no longer a going concern. The reason is clear. The limited exception is based on a notion of implied consent by the principal which consent can be inferred by the fact that the guarantors control and speak for the principal. However, because Leonard Gold is now in bankruptcy, any claims existing on behalf of the company are property of the bankrupt's estate, 11 U.S.C. 541; *Bryson v. Bank of New York,* 584 F.Supp. 1306, 1315 (S.D.N.Y.1984); *In re Interpictures, Inc.,* 86 B.R. 24 (E.D.N.Y.1988), and such claims now belong exclusively to the trustee in bankruptcy of Leonard Gold. *See In re Teltronics Services, Inc.,* 762 F.2d 185, 189 (2nd Cir. 1985), *Bryson,* 584 F.Supp. at 1315. The trustee appointed in Leonard Gold's bankruptcy proceedings has not consented to defendants' assertion of causes of action which may exist in favor of Leonard Gold. Without such consent, defendants cannot claim implied consent from the corporation on the basis of Nicholas DeMarco's and John Oddo's positions in the company prior to its going bankrupt, and thus lack standing to bring these claims. The fact that the trustee has not yet asserted these claims is irrelevant; there has been no showing made that the trustee has taken the specific actions required by Section 554 of Title 11, United States Code, to formally abandon these claims, and the trustee may still choose to assert such claims, on his own, or even at defendants' urging.

■ Furthermore, defendants Nicholas DeMarco and John Oddo, as shareholders, have no right to bring an action in their own names for an alleged wrong committed against the corporation. *See Plapinger,* 495 N.Y.S.2d at 310, 485 N.E.2d at 975; *Fifty States Management Corp. v. Niagara Permanent Savings & Loan Association,* 58 A.D.2d 177, 396 N.Y.S.2d 925, 927 (4th Dept.1977); *see also In re Interpictures, Inc.,* 86 B.R. 24 (E.D.N.Y.1988). Although Leonard Gold was a closely held corporation and Nicholas DeMarco and John Oddo each held 50% of the shares, as shareholders, defendants lack standing to raise these corporate claims. *See In re Interpictures* 86 B.R. at 31.

Having determined that defendants lack standing to bring the alleged counterclaims, defendants' third affirmative defense, alleging that defendants' counterclaims are in excess of the bank's claims is without merit. Likewise, defendants' fourth affirmative defense, alleging that First New York's "wrongful actions and/or omissions" were the cause of defendants' inability to fulfill their alleged obligations to the bank, alleges a claim which, if it exists at all, is one belonging to the bank, not defendants. Defendants' sixth affirmative defense alleges that plaintiff's claims are barred because First New York failed in its duty of good faith, fair dealing and honesty in fact. This claim, according to defendants, is based on the same issues raised in the fourth affirmative defense, namely that First New York, in managing

Leonard's Gold's finances in order to protect its collateral, came into a position of "domination and control" of Leonard Gold's business, and in this position of control, caused the company to go under and thwarted defendants' ability to fulfill their obligations. Again, any duty of care owed by First New York was owed exclusively to Leonard Gold and not to defendants, *see Banco Portugues*, 745 F.Supp. at 972, citing *Citizens Fidelity*, 553 N.Y.S.2d at 902, and any such claim based on a breach of this duty belongs to Leonard Gold's trustee in bankruptcy, not to defendants. Accordingly, defendants' third, fourth, and sixth affirmative defenses are stricken.

Defendants are bound by the terms of their written, unconditional guaranties to pay all of Leonard Gold's debts due and owing to First New York. Accordingly, summary judgment is granted in favor of plaintiff on the issue of liability. Defendants affirmative defenses are stricken and defendants' counterclaims are dismissed. However, insufficient evidence has been produced to determine the amount of debts owing by Leonard Gold to First New York. The bank claims it is owed $1,652,122.32 and defendants do not dispute this amount, however neither side has submitted an affidavit or other evidence of the debts paid and those remaining. Accordingly, this matter is referred to Magistrate Roberts for a hearing to determine the amount owed to First New York, together with interest from June 30, 1989 and other costs, as well as plaintiff's attorney's fees and costs associated with enforcing the guaranties.

So ordered.