In the Matter of M4 **ENTERPRISES, INC., Debtor.**

Bankruptcy No. A95–65456–WHD.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Dec. 27, 1995.

Paul H. Anderson, Jr., Trustee, Burton & Anderson, Atlanta, Georgia.

Mark Marani, Small, White & Marani, P.C., Atlanta, Georgia, for Harvey Mays.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

This matter comes before the Court on a Motion for Protective Order filed by Paul H. Anderson, Jr. (hereinafter "the Trustee"). By presentation of this Motion, the Trustee seeks refuge from a Rule 2004 examination which the Court recently authorized on the request of Harvey P. Mays (hereinafter "Mays"). This matter constitutes a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A) & (O).

Having conducted a hearing regarding the Trustee's Motion and having carefully weighed the arguments of counsel, the Court resolves the matter in accordance with the following reasoning:

## DISCUSSION

This controversy involves a request by Mays to conduct a Rule 2004 [1] examination of the Trustee on issues related to the Trustee's pending Motion for Authorization of Conditional Settlement and Compromise of Controversies with the MAE Group, Inc., Diane Gaffoglio and Frank Maefsky (hereinafter collectively the "MAE Group"). Filed with the Court on December 7, 1995, the Mays motion sought license to question the Trustee on the value of the claims which he proposed to release, as well as the extent to which such a settlement would benefit the estate. As is normally its custom with such requests,[2] the Court granted Mays' motion through an Order dated December 12, 1995.

In light of that impending examination, the Trustee has responded with the present Motion for Protective Order. Although the Trustee has advanced a variety of legal and equitable arguments in support of this Motion, his contentions essentially distill down to the following: (1) that Mays does not qualify as a "party in interest" eligible to move the Court for a Rule 2004 examination; (2) that Mays impermissibly intends to use the examination as a "fishing expedition;" (3) that the presence of a pending adversary or contested proceeding makes this Rule 2004 examination procedurally improper; and (4) that a litany of privileges associated with the Trustee's status should preclude or severely limit any such examination. The Court will address each of these contentions in turn.

### I. Mr. Mays as a Rule 2004 "Party in Interest."

In his first ground for objection, the Trustee calls into question who exactly may request an examination under Federal Rule of Bankruptcy Procedure 2004(a). To that end, the Trustee cites *In re Interpictures*, 86 B.R. 24, 29 (Bankr.E.D.N.Y.1988), for the proposition that Rule 2004's reference to "on

---

1. Rule 2004 provides, in pertinent part:

   (a) *Examination on motion.* On motion of any party in interest, the court may order the examination of any entity.

   (b) *Scope of examination.* The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. In a family farmer's debt adjustment case under chapter 12, an individual's debt adjustment case under chapter 13, or a reorganization case under chapter 11 of the Code, other than for the reorganization of a railroad, the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money

   or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan.

   (c) *Compelling attendance and production of documentary evidence.* The attendance of an entity for examination and the production of documentary evidence may be compelled in the manner provided in Rule 9016 for the attendance of witnesses at a hearing or trial.

   \*   \*   \*   \*   \*   \*

   Fed.R.Bankr.P. 2004.

2. As most practitioners are aware, courts customarily dispose of Rule 2004 motions on an ex parte basis. *See In re Sutera*, 141 B.R. 539, 542 (Bankr.D.Conn.1992).

Motion of a party in interest" requires Mays, as the Movant, to have some direct pecuniary interest in the subject of examination.

Unfortunately, however, the Trustee's reliance upon the *Interpictures* standard appears somewhat misplaced. The *Interpictures* case dealt with the interpretation of "party in interest" under the "case or controversy" standard of Federal Court procedure, not the meaning of that term as used in Rule 2004. *See id.* at 27–29. Furthermore, to the extent that the *Interpictures* decision implies that a direct pecuniary interest standard must apply to Rule 2004(a), *see id.* at 29, the Court finds it to have missed the mark.

The First Circuit dealt directly with the question of who qualifies as a Rule 2004 "party in interest" in *In re Summit Corp.*, 891 F.2d 1 (1st Cir.1989). Rejecting an argument that a strict *Interpictures*-type of standard should apply to Rule 2004 requests, the *Summit* court held:

> Although Rule 2004 does not define the term "party in interest," 11 U.S.C. § 1109 refers to parties in interest for purposes of the right to be heard in a Chapter 11 case. For this purpose, a party in interest includes "the debtor, the trustee, a creditor's committee, an equity security holder's committee, a creditor, or any indenture trustee …" 11 U.S.C. § 1109(b). *The list, however, is not exclusive. Courts have generally construed the term "party in interest" as used in 11 U.S.C. § 1109(b) liberally. A similar common sense interpretation must be made of cases under Rule 2004.*

*Id.* at 5 (citations omitted). Thus, after noting that a narrow construction of Rule 2004's "party in interest" reference would contravene key bankruptcy policies, the First Circuit concluded that the movant before it,

whose only nexus with the case arose from his status as a possible purchaser of stock in the debtor, had a sufficient interest on which to base a valid Rule 2004 motion. *Id.*

The Court finds the reasoning of the *Summit* court both instructive and controlling on the question of whether Mays qualifies as a proper Rule 2004 movant. Mays stands as the sole shareholder of the Debtor corporation.[3] Moreover, unlike the movant in *Summit*, his status does not hinge upon the contingency of a contemplated future purchase. As such, he easily would appear to hold that quantum of interest contemplated by the First Circuit.

## II. The Examination as an Abuse of Rule 2004.

■ The Trustee next contends that the Court should block examination of him because Mays intends to use Rule 2004 as license for a "fishing expedition." (Mem. Supp. Mot. Prot. Ord. at 6). Even assuming the accuracy of this allegation, however, "the scope of examination allowed under Rule 2004 is larger than that allowed under the Federal Rules of Civil Procedure and can legitimately be in the nature of a 'fishing expedition.'" *In re Wilcher*, 56 B.R. 428, 433 (Bankr.N.D.Ill.1985) (citing *In re Vantage Petroleum Corp.*, 34 B.R. 650, 651 (Bankr.E.D.N.Y.1983)). To completely forbid pursuit of a Rule 2004 examination of the Trustee under such justification would substantially contravene the policy behind the Rule and compromise bankruptcy's general predilection for open-aired examination. *See In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. E.D.Wis.1984); *In re Good Hope Refineries, Inc.*, 9 B.R. 421, 423 (Bankr.D.Mass.1981).

---

**3.** Additionally, Mays holds at least a colorable argument of subrogation to the rights of Bank South, N.A., a large secured creditor of the Debtor. The validity of that claim remains subject to dispute and will be resolved through a pending adversary proceeding. The Trustee also has pointed out in open court that the proposed settlement with the MAE Group makes itself contingent upon success by the Trustee and the MAE Group, who have aligned themselves to create a "unified front" by which to defeat Mays in the adversary proceeding. In fact, this negative contingency, that the settlement only takes effect if Mays has been found not to be a "creditor," formed a key point in the Trustee's "party in interest" arguments to the Court.

Noteworthy as these facts may be, however, the Court need not address the impact of Mays' disputed creditor status upon his qualification as a Rule 2004 "party in interest." Independent of any subrogation to Bank South's claim, Mays stands as the sole shareholder of the Debtor, an interest which appears to satisfy the flexible standard of the *Summit* case.

■ At the same time, however, the Court will not condone the use of Rule 2004 in a fashion which unduly harasses the Trustee or frivolously wastes the assets of the estate. *See In re Table Talk, Inc.,* 51 B.R. 143, 145 (Bankr.D.Mass.1985); *In re Georgetown of Kettering,* 17 B.R. 73, 75 (Bankr.S.D.Ohio 1981). Consequently, any Rule 2004 examination of the Trustee by Mays must be closely confined in scope and limited in duration. Furthermore, Mays should schedule his examination at the Trustee's convenience and conduct it at the Trustee's place of business so as to minimize consequent costs to the estate.

### III. The Examination as Procedurally Improper.

To support his third ground for opposing examination, the Trustee points out that once the parties have commenced an adversary or contested proceeding, they should discontinue use of the Rule 2004 examination as a discovery tool. (Mem. Supp. Mot. Prot. Ord. at 6) (citing 8 COLLIER ON BANKRUPTCY ¶ 2004.03[1] (15th ed. 1995)). Thus, reasons the Trustee, the pendency of proceedings involving himself and Mays should preclude application of Rule 2004.

### A. Pending Adversary Proceeding.

■ As a general proposition, the Court agrees with the "pending proceeding" rule advanced by the Trustee. In the context of adversary proceedings, this rule founds itself on the operation of Federal Rules of Bankruptcy Procedure 7026 through 7037, which mandatorily[4] supplant the applicability of Rule 2004 by triggering the discovery system found in the Federal Rules of Civil Procedure. *See In re Drexel Burnham Lambert Group, Inc.,* 123 B.R. 702, 711 (Bankr. S.D.N.Y.1991); *see also* Fed.R.Bankr.P. 7026–37; Fed.R.Civ.P. 26–37. As such, once the parties have commenced an adversary proceeding, they may not employ Rule 2004 as a discovery device by which to uncover evidence related to that proceeding. *Id.*

### B. Pending Contested Matter.

■ The nature of the "pending proceeding" rule changes, however, when the pending proceeding takes the form of a contested matter. Rather than mandatorily engaging the Federal Rules of Civil Procedure, as its counterpart in the case of adversary proceedings does, Federal Rule of Bankruptcy Procedure 9014 states that those rules shall apply *"unless the court otherwise directs."* Fed.R.Bankr.P. 9014. Thus, in the case of contested matters such as that before the Court,[5] the Federal Rules of Civil Procedure offer the preferable default, from which the Court may deviate at its discretion. *See In re Analytical Sys., Inc.,* 71 B.R. 408, 413 (Bankr.N.D.Ga.1987) (Cotton, B.J.) (existence of pending contested matter between parties did not prevent Rule 2004 examination).

**4.** At first blush, the mandatory application of the "pending proceeding" rule to the context of adversary proceedings might appear dispositive of the issue at hand. There currently exists an adversary proceeding regarding the subrogation of Mays to the secured claim of Bank South and certain counterclaims which the Trustee has against him. *See Mays v. Gaffaglio,* No. 95–6453A. (Bankr.N.D.Ga. filed Aug. 8, 1995). In this case, however, the 2004 Motion approved by the Court relates not to the pending adversary proceeding, but to the Trustee's proposed settlement of claims against the MAE Group. Indeed, Mays' Rule 2004 Motion specifically limits itself to avoid any overlap with issues in the adversary proceeding. As such, the "pending proceeding" rule finds no direct application to the present controversy by simple virtue of an ongoing adversary case existing.

Furthermore, to the extent that there may exist any confusion regarding the scope of the Rule 2004 inquiry approved by the Court and its po-

tential overlap with the adversary proceeding, those parameters now will receive further delineation. Any examination of the Trustee shall confine itself exclusively to the value of claims held by the estate against the MAE Group, the Trustee's method of reaching such a valuation, and the extent to which the proposed settlement will benefit the estate itself. Foray into the realm of the pending adversary proceeding will violate the terms of the Court's authorization, as well as the scope of Rule 2004.

**5.** Here, any reservations as to the "contested" nature of the Trustee's Motion to Settle have been dispelled by Mays' recent filing of a formal Objection to Motion for Authorization of Conditional Settlement and Compromise of Controversies with the MAE Group, Inc., Diane Gaffoglio and Frank Maefsky. *See generally* FED.R.BANKR.P. 9014 advisory committee's note.

■ Here, the very nature of the dispute prompts the Court to allow a Rule 2004 examination. Mays' argument in support of a Rule 2004 examination carries with it an implicit suggestion that the Trustee has engaged in an act of bankruptcy partisanship to the detriment of the estate itself. As the Court previously has pointed out in the course of this case, due to the Trustee's strict fiduciary duties to the estate, the very aura of such impropriety [6] threatens more extensive damage than does the act itself. *See In re Showcase Jewelry Design Ltd.*, 166 B.R. 205, 206 (Bankr.E.D.N.Y.1994) (citing *In re Michigan Interstate Railway Co.*, 32 B.R. 325 (Bankr.E.D.Mich.1983) (regarding the impression of impropriety on the part of a Trustee)). Under these circumstances, the Court consequently finds the "open-air" inquiry of the Rule 2004 examination to present a discovery vehicle more appropriate than that offered by the default provisions of the Federal Rules of Civil Procedure. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 305, 84 S.Ct. 710, 739–40, 11 L.Ed.2d 686 (1964) ("[a]s Mr. Justice Brandeis correctly pointed out, 'sunlight is the most powerful of all disinfectants'") (citations omitted). Notwithstanding this necessity, however, the Court deems it appropriate to limit the scope of the Rule 2004 examination so as to avoid harassment of the Trustee, any unnecessary expenditure of estate funds, or an abuse of the circumstances. *See In re Table Talk, Inc.*, 51 B.R. 143, 145 (Bankr.D.Mass.1985);

*In re Georgetown of Kettering*, 17 B.R. 73, 75 (Bankr.S.D.Ohio 1981).

### IV. Issues of Privilege.

■ Finally, the Trustee contends that certain privileges associated with his official status should preclude or severely limit any Rule 2004 examination by Mays.[7] The Court agrees that certain matters within the scope of Mays' examination undoubtedly will fall subject to a legitimate claim of privilege by the Trustee. At the same time, however, the Court does not believe that any blanket privilege exists as a consequence of the Trustee's status or investigative functions in this case so as to preclude all examination of him under Rule 2004.[8] Rather, the Trustee must submit to examination and, as each individual question arises, he then should assert any meritorious privileges which he finds appropriate.[9] Furthermore, while the Court expects the Trustee to freely exercise those privileges which do apply, he should not, and undoubtedly will not, engage in any course of obstructionist behavior regarding this matter.

### CONCLUSION

Having given the matter careful consideration, the Court finds that cause exists to submit the Trustee, Paul H. Anderson, Jr., to a Rule 2004 examination regarding the propriety of his Motion for Authorization of Conditional Settlement and Compromise of Controversies with the MAE Group, Inc.,

6. As the Court also has pointed out on numerous occasions, Mr. Anderson has never given the Court, in this bankruptcy case or the many preceding it in which he has served as a Trustee, any reason to believe that he has acted in a less than proper manner while fulfilling his responsibilities.

7. In his brief, the Trustee contends that many individual matters may fall within an attorney client privilege, a work product privilege, a limited accountant-client privilege, or even a common defense privilege. (Mem. Supp. Mot. Prot. Ord. at 7). Rather than justifying a protective order, however, these privileged matters should form the basis of an objection to specific questions in the course of the examination. *See In re Kelton Motors, Inc.*, 130 B.R. 183, 184–85 (Bankr.D.Vt. 1991) ("[a]lthough the Trustee may object to questions during the deposition that are indeed protected by the work product doctrine, Trustee's

defensive posture [in seeking a protective order] is premature").

8. 18 U.S.C. § 3057 certainly makes provision for a broad "Bankruptcy Crimes Investigation Privilege" which protects the Trustee or a bankruptcy judge in the investigation of bankruptcy-related crimes. *See In re Stockbridge Funding Corp.*, 153 B.R. 654, 656–57 (Bankr.S.D.N.Y.1993). To the Court's knowledge, however, the Trustee has conducted no such criminal investigation in this case.

9. The Court wishes to remind the Trustee, however, that any and all privileges held by him come subject to strong fiduciary duties, and they must be exercised accordingly. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 n. 7, 105 S.Ct. 1986, 1994 n. 7, 85 L.Ed.2d 372 (1985).

Diane Gaffoglio and Frank Maefsky. At the same time, however, the Court deems it appropriate to closely limit that examination so as to avoid any harassment of the Trustee or unnecessary expense to the estate. Consequently, it is **ORDERED** that the Trustee shall submit to a Rule 2004 examination by Harvey P. Mays, to be scheduled at the Trustee's convenience and conducted at the Trustee's place of business.

It is **FURTHER ORDERED** that this examination shall limit itself exclusively to the following issues:

(1) The viability and consequent value of claims held by the estate against the MAE Group, Inc., Diane Gaffoglio and Frank Maefsky;

(2) The Trustee's method of reaching any such valuation of those claims; and

(3) The extent to which the Trustee's proposed settlement of those claims will benefit the estate.

It is **FURTHER ORDERED** that this examination shall not exceed a period of two (2) hours in length.

It is **FURTHER ORDERED** that, during this examination, the Trustee shall retain the right to assert any evidentiary privileges applicable to those inquiries made of him.

It is **FURTHER ORDERED** that the Trustee shall afford Mays the opportunity to examine any and all non-privileged documents falling within the scope of this examination and to photocopy such documents at his own expense.

**IT IS SO ORDERED.**