10-1684-cv
HSH Nordbank AG New York Branch v. Swerdlow

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 4th day of May, two thousand and eleven.

Present:
> ROBERT D. SACK,
> PETER W. HALL,
> DEBRA ANN LIVINGSTON,
> > *Circuit Judges.*

––––––––––––––––––––––––––––––––––––––––––––––––––

HSH NORDBANK AG NEW YORK BRANCH, As Administrator Agent for Itself and Certain Lenders,

> *Plaintiff-Appellee*,

> v.                                                              No. 10-1684-cv

BRIAN STREET, JAMES COHEN,

> *Defendants-Appellants*.[*]

––––––––––––––––––––––––––––––––––––––––––––––––––

––––––––––––––––––

[*] In February 2011, Plaintiff-Appellant HSH Nordbank AG New York Branch and Defendant-Appellant Michael Swerdlow filed a stipulation withdrawing Swerdlow's consolidated appeals in Docket Nos. 10-1537-cv and 10-2200-cv. The Clerk of Court is directed to amend the official caption as set forth above.

FOR APPELLEE:          Justin N. Kattan (Michael H. Barr, *on the brief*), SNR Denton US, LLP, New York, NY.

FOR APPELLANTS:       Stephen M. Rathkopf (Raymond N. Hannigan and Ross L. Hirsch, *of Counsel*), Herrick, Feinstein LLP, New York, NY.

_____

Appeal from the United States District Court for the Southern District of New York (Cote, *J.*).  **ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the District Court be and hereby is **AFFIRMED**.

Defendants-Appellants Brian Street and James Cohen ("Defendants") appeal from the district court's (Cote, *J.*) grant of summary judgment to Plaintiff-Appellee HSH Nordbank AG New York Branch ("Nordbank") on Nordbank's claims that Defendants breached two guaranties executed in connection with a real estate construction loan (the "Loan") in Florida.  Defendants challenge the district court's determination that under the terms of the guaranties they waived any possible defenses to liability, and that the affirmative defenses they raised were without merit.  Defendants also challenge the district court's award of damages and attorneys' fees.  We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

I.     Summary Judgment

We review the grant of summary judgment *de novo*, *see Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003), which is appropriate only if "there is no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a).  There is no dispute that the Payment and Principal Guaranties (the "Guaranties") are governed by New York law, under which they are construed *strictissimi juris*, but "only after the meaning of the contract of guarantee has been determined according to the

2

ordinary principles of contract construction." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 188 F.3d 31, 34 (2d Cir. 1999) (internal quotations omitted). Summary judgment is appropriate on a contract claim under New York law where "the intent of the parties can be determined from the face of the agreement." *Katel Ltd. Liab. Co. v. AT & T Corp.*, 607 F.3d 60, 64 (2d Cir. 2010) (internal quotations omitted). And, "[w]here, as here, a creditor seeks summary judgment upon a written guaranty, the creditor need prove no more than an absolute and unconditional guaranty, the underlying debt, and the guarantor's failure to perform under the guarantee." *Kensington House Co. v. Oram*, 739 N.Y.S.2d 572, 572 (App. Div. 1st Dep't 2002); *see Chemical Bank v. Haseotes*, 13 F.3d 569, 573 (2d Cir. 1994).

We have little difficulty finding that Nordbank satisfied its *prima facie* case: the Guaranties are absolute and unconditional; Events of Default occurred in March and April 2008, after which Nordbank accelerated the Loan; Nordbank notified Defendants of their liabilities under the Guaranties; and Defendants refused to render payment. Defendants do not contest these facts, *per se*. Rather, they argue that the "default" on the Loan that Nordbank relies on is not "*bona fide*" because it was caused by Nordbank, and that there is no "underlying debt" because the Supplemental Intercreditor Agreement ("SICA") between Nordbank and Cerberus Capital Management suspended the Borrower's default on the Loan. We reject both arguments. Defendants' claim that they should be discharged of their obligations under the Guaranties because of Nordbank's alleged bad faith or frustration of performance constitutes a defense to liability; even if this claim had merit, it would not undermine Nordbank's *prima facie* case. *See Hotel 71 Mezz Lender LLC v. Mitchell*, 880 N.Y.S.2d 67, 68-69 (App. Div. 1st Dep't 2009) (holding that creditor met *prima facie* burden on guaranty despite guarantor's claim of

3

frustration of performance and breach of covenant of good faith and fair dealing). And contrary to Defendants' claims, the express terms of the SICA made clear that the Loan "remain[s] in default and accelerated."

Defendants advance various affirmative defenses in response to Nordbank's *prima facie* case. But to prevail on any of these, Defendants must overcome the broad waivers set forth in the Guaranties. It is clear and unambiguous that the Guaranties are "absolute and unconditional irrespective of [*inter alia*] . . . any change in the time, manner or place of payment of, or in any other term of, all or any of the Obligations [under the Loan Documents] . . . [and] any other circumstance which might otherwise constitute a defense available to, or a discharge of, Borrower or . . . the Guarantors." We have previously recognized that "[a]bsolute and unconditional guaranties . . . [can] preclude guarantors from asserting a broad range of defenses under New York law." *Merrill Lynch*, 188 F.3d at 35; *see also First N.Y. Bank for Bus. v. DeMarco*, 130 B.R. 650, 654 (S.D.N.Y. 1991) ("Absolute and unconditional guaranties . . . are consistently upheld by New York courts. Indeed, unconditional guaranties have been held to foreclose, as a matter of law, guarantors from asserting any defenses or counterclaims.") (quoted in *Merrill Lynch*, 188 F.3d at 36). In *Merrill Lynch*, we held that a guaranty which defined the guarantor's obligations as "unconditional and irrevocable, irrespective of . . . any other circumstances which might otherwise constitute a legal or equitable discharge [or] defense" had the effect of waiving "all legal or equitable" defenses. *Id.* at 36. We see no material difference between the guaranty in *Merrill Lynch* and the Guaranties at issue in this case. Both define the guarantor's obligations as unconditional and expressly waive any defense that the guarantor might raise.

4

Defendants maintain that, despite these express waivers, Nordbank was bound by a covenant of good faith and fair dealing and could not frustrate Defendants' performance of the Loan, and to the extent Nordbank breached either of these obligations, this constitutes a viable defense under the Guaranties. Defendants rely principally on *Canterbury Realty & Equip. Corp. v. Poughkeepsie Sav. Bank*, 524 N.Y.S.2d 531 (App. Div. 3d Dep't 1988), and *Bank of China v. Chan*, 937 F.2d 780 (2d Cir. 1991), in support of this proposition, but even assuming these defenses could be raised in the face of the Guaranties' broad waiver provisions, we find these decisions distinguishable, such that any such defense would fail on the merits. In *Canterbury*, the New York Appellate Division, Third Department, held that summary judgment was improper on the bank's action to enforce a guaranty because, despite the unconditional language of the guaranty, issues of fact existed as to whether a bank employee had orally modified the terms of the original underlying debt and whether the primary obligor had relied on that modification to its detriment, thus precipitating the default upon which the bank sought to enforce the guaranty. 524 N.Y.S.2d at 534-35. In *Bank of China*, which arose under the Uniform Commercial Code, we held that it would be inequitable to enforce an absolute guaranty against a guarantor where the bank/creditor failed to handle the primary obligor's letters of credit in a commercially reasonable manner. 937 F.2d at 784-86.

Analogizing *Canterbury* and *Bank of China* to the instant case, Defendants contend that Nordbank breached its implied duty of good faith and fair dealing and frustrated their performance on the Loan by refusing to fund Draw Request #26, which caused liens to be filed against the project and led to the Events of Default. But this argument fails for the simple reason that Nordbank had no obligation to fund any advances, including Draw Request #26, after December 14, 2007; when it denied Draw Request #26 in February 2008, it did so consistent

5

with the express terms of the Loan. *See* Loan Agreement § 7.2(c) ("Borrower may not request that an Advance be made and Lender will not be obligated to make an Advance for any purpose after [December 14, 2007].") Indeed, Nordbank referenced this provision of the Loan in its correspondence with the Borrower between December 2007 to February 2008, reiterating that, consistent with the Loan's terms, it was under no obligation to grant advances after December 14; that any further advances would be assessed on a case-by-case basis and granted or denied at its sole and absolute discretion; and that if any advances were granted, this did not constitute a course of conduct nor did it waive any of Nordbank's rights under the Loan or the Guaranties. To the extent Defendants argue that any Nordbank employees gave oral assurances that further advances would be granted, any alleged oral modification was expressly prohibited under § 16.3 of the Loan. *Canterbury* is thus inapposite because in that case there was an outstanding issue of fact as to whether the primary obligor had defaulted on the underlying loan given the bank employee's alleged oral modifications, whereas here no such modification was permitted, and it is clear that Nordbank had no obligation to fund further advances. *Bank of China* is also inapposite because the underlying loan there was silent as to whether the bank could undertake the actions which the guarantor alleged breached the implied covenant of good faith and fair dealing, and here Nordbank's refusal to fund advances after December 14, 2007 was expressly permitted under the Loan. *See In re Musicland Holding Corp.*, 386 B.R. 428, 439 (S.D.N.Y. 2008) (distinguishing *Bank of China* on similar grounds).

Given the above, we reject Defendants' assertion that Nordbank's alleged bad faith, even if it somehow vitiates the Defendants' waiver of defenses under the Guaranties, constitutes a viable affirmative defense. Indeed, what Defendants characterize as bad faith—Nordbank's decision not to fund Draw Request #26—was consistent with Nordbank's rights under the Loan.

6

*See Fesseha v. TD Waterhouse Investor Servs., Inc.*, 761 N.Y.S.2d 22, 23 (App. Div. 1st Dep't 2003) ("While the covenant of good faith and fair dealing is implicit in every contract, it cannot be construed so broadly as effectively to nullify other express terms of a contract, or to create independent contractual rights."); *see also Consol. Edison, Inc. v. N.E. Utils*, 426 F.3d 524, 529 (2d Cir. 2005) (citing *Fesseha*, 761 N.Y.S.2d at 23).

As for Defendants' claim that, irrespective of the December 14, 2007, deadline, Nordbank was required to release "retainage" as part of Draw Request #26, the Loan clearly provides that the release of retainage as part of the final advance is "subject to the provisions of Section 7.2"—i.e., to the same December 14 deadline as all other advances. *See* Loan Agreement § 7.3. That section 1.1 of the Loan provides a general definition of retainage does not alter this fact, since section 7.3 mandates specifically how retainage will be disbursed. *See generally GSI Commerce Solutions, Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 214 (2d Cir. 2010) (recognizing the basic canon of construction of contract law that "specific language in a contract will prevail over general language where there is an[y] inconsistency between two provisions") (internal quotations omitted).

Finally, Defendants are incorrect that the SICA obviated their obligations under the Guaranties. The broad waiver provisions of the Guaranties make clear that Defendants would remain liable irrespective of "any change in the time, manner or place of payment, or in any other term of, all or any of the Obligations," and acknowledged that Nordbank could, "without notice to or further consent" of Defendants, extend the time of payment or make any agreement with Holly Hill or any other party to extend, renew, compromise, or discharge any of the obligations without impairing the Guaranties. *See* Payment Guaranty § 2; Principal Guaranty § 2. And to the extent Defendants claim that the SICA constitutes a "novation" of the underlying

7

Loan Agreement, this is contradicted by the SICA's express terms, under which it is "not intended (and shall not be deemed or construed) to effect an amendment, modification, restructuring or reinstatement of the Mortgage Loan, which remains in default and accelerated." Defendants characterize this language as self-serving, but this does not make it invalid, and they fail to identity any reason why we should construe the SICA in a manner inconsistent with its express terms.

Accordingly, we find that the district court correctly determined that Defendants were liable under both the Payment Guaranty and the Principal Guaranty.

II.    Damages and Attorneys' Fees

Defendants assert that the district court miscalculated the amount of interest due because: (1) it failed to account for the fact that under the SICA, interest has been capitalized and converted to principal and is thus no longer due, and (2) it awarded interest based on the Default Rate under the Loan Agreement, which is not applicable under the SICA.  We reject both of these arguments because they are based on the erroneous assumption that the SICA superceded the Loan Agreement, and that Defendants' obligations under the Guaranties should be determined with reference to the former, not the latter.  As already noted, the express terms of the Guaranties keyed Defendants' liabilities to the Loan Agreement, which remained unchanged despite any subsequent agreement—like the SICA—between Nordbank and Holly Hill or any other party.  *See* Payment Guaranty § 2; Principal Guaranty § 2.  We therefore affirm the district court's calculation of the amount of interest due.

We review for abuse of discretion an award of attorneys' fees pursuant to a valid contract, *see U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 74 (2d Cir. 2004), cognizant that "'abuse of discretion—already one of the most deferential standards of

8

review—takes on special significance when reviewing fee decisions," *Goldberger v. Intergrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2002) (internal quotations omitted), because "the district court, which is intimately familiar with the nuances of the case, is in a far better position to make certain decisions than is an appellate court, which must work from a cold record," *In re Bolar Pharm. Co., Inc., Sec. Litig.*, 966 F.2d 731, 732 (2d Cir. 1992) (per curiam). A district court abuses its discretion in awarding counsel fees when the award rests on an error of law or a clearly erroneous factual finding, or "cannot be located within the range of permissible decisions." *Scott v. City of New York*, 626 F.3d 130, 132 (2d Cir. 2010) (per curiam) (internal quotations omitted). Defendants do not maintain that the district court miscalculated the attorneys' fees award, nor do they assert that the court relied on an erroneous—let alone a clearly erroneous—factual finding. Instead, they advance the broad claim that the award is generally unreasonable because Nordbank "opened its checkbook to counsel." The district court correctly noted, however, that Defendants' actions during discovery were likely the cause of Nordbank's significant legal expenses, and based on these facts, we cannot say that the district court abused its discretion in awarding attorneys' fees.

The judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK
