(January 16, 2014)

■ COOPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK, B.A., "RABOBANK INTERNATIONAL," NEW YORK BRANCH, Appellant, v FRANCISCO JAVIER HERRERA NAVARRO, Respondent, et al., Defendant. [978 NYS2d 186]—

Nonparty Agra Services of Canada, Inc. (Agra Canada), a Canadian corporation, was in the business of trading agricultural commodities between Mexico and Canada. The company was the sole shareholder of nonparty Agra USA, a Delaware corporation. Defendant Francisco Javier Herrera Navarro (Herrera) was a director of both Agra Canada and Agra USA but was largely uninvolved in either company's business operations. Eduardo Guzman Solis, a former defendant in this action, operated both companies.

In September 2004, Agra Canada and plaintiff Cooperatieve Centrale Raiffeisen Boerenleenbank, B.A., Rabobank International, New York Branch (Rabobank) entered into a receivables

purchase agreement (RPA). Under that agreement, Rabobank was to buy certain receivables belonging to Agra Canada in exchange for regularly scheduled payments to Rabobank. Guzman was responsible for managing Agra Canada's and Agra USA's relationship with Rabobank under the RPA.

In September 2005, in connection with the RPA, both Herrera and Guzman executed personal guaranties in Rabobank's favor. In section 1 (a) of the guaranty, Herrera unconditionally guaranteed the amounts due on the receivables that Agra Canada sold to Rabobank, and in section 1 (b), he unconditionally guaranteed the obligations of Agra USA. The definition of "obligations" comprised "all obligations and liabilities of [Agra USA] to [Rabobank] now or hereafter existing . . . whether for principal, interest, fees, expenses or otherwise." Herrera's guaranty also contained a paragraph stating that his agreement to pay the obligations was "absolute and unconditional irrespective of any lack of validity or enforceability of such agreement [or] any other circumstance which might otherwise constitute a defense available to, or a discharge of, [Agra Canada] or a guarantor." Agra USA also entered into a guaranty in Rabobank's favor; as had Herrera, Agra USA unconditionally guaranteed Agra Canada's payment obligations arising under article 9.02 (a) (iii) of the RPA.

Guzman died in December 2011.[1] Soon afterward, Rabobank told Herrera that Agra Canada had failed to remit its regularly scheduled quarterly payment under the RPA. When Herrera retained an independent accounting firm to investigate, he discovered that Guzman had been running a Ponzi scheme and that the receivables were, in fact, nonexistent. By then, Agra Canada owed Rabobank approximately $42 million under the RPA.

Rabobank sought to enforce Herrera's and Guzman's guaranties of Agra Canada's obligations. To that end, in January and February 2012, Rabobank obtained control over Agra Canada, placed it into receivership in Canada, and arranged the appointment of Deloitte & Touche Inc. as receiver and trustee.

On March 2, 2012, Rabobank commenced a federal action against Agra Canada, Agra USA, Herrera, and Guzman's estate in the United States District Court for the Southern District of New York, seeking to recover the receivables allegedly due under the guaranties. Agra USA did not respond to the complaint. Accordingly, on April 3, 2012, Rabobank filed a request under Federal Rules of Civil Procedure rule 55 (a) for entry of a default against Agra USA, and the Clerk issued a certificate of default.

---

1. Guzman's estate was eventually added as a codefendant.

On April 11, 2012, Agra Canada, as sole shareholder of Agra USA, voted to remove all officers and directors of Agra USA, including Herrera. Agra Canada then elected an employee of Deloitte to serve as sole officer and director of Agra USA.

On April 16, 2012, Rabobank filed an order to show cause in federal court requesting the entry of a default judgment against Agra USA (*see* Fed Rules Civ Pro rule 55 [b] [2]). Three days later, on April 19, 2012, Rabobank voluntarily discontinued the federal action as against Herrera and Guzman's estate, and filed a declaration in support of its order to show cause.

By letter dated April 25, 2012, Hayes and Boone, LLP, counsel for both Rabobank and Deloitte, instructed a lawyer for Herrera to secure and return to Deloitte any assets belonging to Agra USA. Counsel also noted in that letter that Deloitte's representative held "exclusive corporate authority" over Agra USA. Finally, on April 30, 2012, the federal court entered a default judgment against Agra USA in the amount of $41,991,980. Rabobank commenced this State action on the same day, seeking to recover the amount of the default judgment from Herrera. In its motion for summary judgment in lieu of a complaint, Rabobank asserts that Herrera is liable under sections 1 (a) and (b) of the guaranty.

Herrera argues that plaintiff Rabobank, which controlled Agra Canada, also controlled Agra USA. What is more, Herrera asserts, by the time the federal court granted entry of the default judgment, he was only nominally a director of Agra USA. As a result of these circumstances, Herrera concludes, Rabobank engineered the default judgment by collusion, and the judgment therefore does not actually constitute an "obligation" of Agra USA under section 1 (b) of the guaranty. Thus, Herrera concludes, because no obligation came into existence, his guaranty was never triggered at all.

This argument has no merit. As noted above, Herrera's guaranty stated that it was "absolute and unconditional" despite any circumstances that might constitute a defense. Because Herrera's guaranty clearly provides that he waives all defenses, his position depends on his framing the collusion argument as something other than a "defense." Thus, Herrera's argument is merely a semantic one, meant to force the issue into a framework more favorable to his position by, in essence, reframing a defense as the failure of a condition precedent.

However, no valid basis for this argument exists. On the contrary, no matter how labeled, Herrera's assertion of collusion is, in fact, a defense to his guaranty inasmuch as he offers it in an effort to avoid performance under the guaranty (*see e.g.*

*Preferred Capital v PBK, Inc.*, 309 AD2d 1168, 1168-1169 [4th Dept 2003] [noting that defendants opposed a summary judgment motion on the basis of "an unpleaded affirmative defense of fraud and collusion"]; 23 NY Jur 2d, Contribution, Indemnity, and Subrogation § 155 [in indemnity context, noting that an indemnitor "may always set up the defense that the judgment in the prior action against the indemnitee was procured by collusion or fraud"]).

Herrera cannot avoid his agreement simply by declaring that a defense is not really a defense because it actually calls into question the validity of the obligation. This exception would swallow the rule whole, since many defenses—including, for example, fraudulent inducement—could be said to call an entire obligation into question. Indeed, courts have rejected similar arguments (*see e.g. Citibank v Plapinger*, 66 NY2d 90, 94-95 [1985] [guarantor foreclosed as a matter of law from raising any defense, including one that he was fraudulently induced to execute the guaranty]; *Red Tulip, LLC v Neiva*, 44 AD3d 204, 209 [1st Dept 2007], *lv dismissed* 10 NY3d 741 [2008] [waiver language upheld to preclude discharge of guaranty even though guarantor alleged that obligee had wrongly interfered with refinancing and sale efforts and thus had deliberately triggered foreclosure]).

Even if the issue of control were relevant, the record presents no material issues of fact on that issue. Although the record shows that Deloitte began taking control of Agra USA as early as February 2012, the record also shows that Herrera was still a director of Agra USA until April 11, 2012, when Agra Canada voted to remove him. Indeed, neither party disputes that on March 7, 2012, when Rabobank served the complaint on Agra USA in the federal action, Herrera was still a director of that company. Nonetheless, he did not cause an answer or other response to the complaint to be interposed on behalf of that company, and he did not attempt to do so despite the fact that he was still a director of the company. Nor does Herrera allege in his papers that anyone prevented him from doing so (*cf. Canterbury Realty & Equip. Corp. v Poughkeepsie Sav. Bank*, 135 AD2d 102, 107 [3d Dept 1988] [" '(a) promisee who prevents the promisor from being able to perform the promise can not maintain suit for nonperformance; he discharges the promisor from duty' " (quoting 6 Corbin, Contracts § 1265 at 52)]). Likewise, Herrera was still a director of Agra USA on April 4, 2012, when Rabobank filed a request in the federal action for entry of default judgment against Agra USA.

The dissent places much reliance on *Canterbury*. That reli-

ance, however, is misplaced. In *Canterbury*, the defendant bank provided financing to Canterbury Realty and Equipment Corporation, one of the corporate plaintiffs (*Canterbury*, 135 AD2d at 103). Among the financing instruments was a revolving credit agreement giving Canterbury a credit line, secured by its accounts receivable, against which it could draw checks to pay operating expenses (*id.*). Two of Canterbury's officers signed instruments making them guarantors of Canterbury's obligation; the guaranty agreement allowed the bank to accelerate the total amount due under the loan and to demand payment from the guarantors upon the occurrence of certain events—for example, if Canterbury suspended its business (*id.* at 104).

Canterbury eventually began to exceed the credit line, although evidence suggested it was forced to do so because of the bank's actions. As a result, the bank decided that it would no longer honor Canterbury's checks, and would retain incoming funds from Canterbury's accounts receivable. The plaintiffs commenced an action against the bank, asserting that the bank's wrongful conduct had forced Canterbury to lose its accounts receivable and therefore to cease its business operations. The bank then accelerated the debt and demanded payment in full (*id.* at 105). Under those circumstances, the Third Department found that the record presented an issue of fact as to whether the bank "brought about the occurrence of the very condition precedent . . . upon which it relied to accelerate the loan against the guarantors" (*id.* at 107).

The issue in this case, however, is different from the one presented to the *Canterbury* Court. First of all, the Third Department's holding, in which it characterizes the cessation of Canterbury's business as a "condition precedent," spells out precisely the issue that the dissent fails to analyze—namely, whether the purported collusion should be characterized as a defense or as the failure of a condition precedent. As noted above, Herrera frames the issue as the failure of a condition precedent only because he cannot prevail otherwise. Collusion is, and remains, a defense, and Herrera unconditionally waived all defenses when he signed the guarantor agreement. The dissent skirts this issue, instead simply accepting Herrera's characterization.

At any rate, the dissent does not acknowledge that the collusion, even if it existed, goes to the question of how and when the default judgment was entered, not to the question of the underlying indebtedness. Herrera has never alleged that any party colluded with Guzman to engage in a fraudulent scheme leading to a $42 million indebtedness. Rather, Herrera alleges

that Rabobank colluded with Agra Canada to force entry of the default judgment. Therefore, the situation here is fundamentally different from the one presented in *Canterbury*, where the evidence suggested that the defendant bank forced the events leading up to the acceleration and the guarantors' indebtedness. Concur—Sweeny, Saxe and Moskowitz, JJ.

Mazzarelli, J.P., and Manzanet-Daniels, J., dissent in a memorandum by Manzanet-Daniels, J., as follows: Defendant agreed to guarantee all obligations of Agra USA. However, the "obligation" plaintiff seeks to enforce—a federal court default judgment of more than $41 million that plaintiff arguably obtained by collusion—would not, if the collusion is ultimately proved, constitute a valid obligation of Agra USA under defendant's guarantee. An issue of fact exists as to whether plaintiff unfairly brought about the very condition upon which it relies to trigger defendant's guarantee. The waiver of defenses contained in the guarantee does not apply under the circumstances.

After discovering that Eduardo Guzman Solis had been engaged in a Ponzi scheme, plaintiff took steps to assume control of both Agra USA and Agra Canada. On or about January 18, 2012, plaintiff filed an application for a bankruptcy order as against Agra Canada in Alberta, Canada. Plaintiff, as the senior secured creditor of Agra Canada, nominated the accounting firm of Deloitte & Touche to be the receiver and trustee of Agra Canada's bankrupt estate. By order dated January 20, 2012, Deloitte & Touche was appointed interim receiver with the powers, inter alia, to take possession and control of Agra Canada and all proceeds, receipts and disbursements arising out of its property; to receive and collect all monies owed or thereafter owing to Agra Canada; and to take any reasonable steps incidental to the exercise of its powers. Plaintiff funded Deloitte's efforts through Haynes & Boone, LLP, their shared attorney and counsel for plaintiff on the appeal.

On January 18, 2012, plaintiff commenced proceedings in Texas state court seeking a garnishment order against certain property of Agra Canada and its wholly-owned subsidiary, Agra USA, resulting in the issuance of writs of garnishment on January 18, 2012. Deloitte allowed plaintiff to assume control over the recovery of assets of Agra, USA, the wholly-owned subsidiary of Agra Canada.[2]

On March 2, 2012, as the majority notes, plaintiff commenced an action against Agra USA, Herrera, and Guzman's estate in

---

2. Plaintiff voluntarily discontinued the Texas action on June 6, 2012, when defendant guarantor cross-moved to dismiss the within action on the ground of a prior action pending.

the United States District Court for the Southern District of New York.

On April 11, 2012, plaintiff caused Agra Canada to formally remove defendant Herrera as the director and officer of Agra USA and to replace him with the Deloitte receiver. As a result, Mr. Bruce Beggs held exclusive corporate authority over Agra USA.

By order to show cause dated April 16th, plaintiff sought entry of a default judgment against Agra USA in the amount of $41,991,980 plus interest.[3] Agra USA was directed to appear on April 24, 2012 to show cause as to why a default judgment ought not to be entered. Agra USA did not appear on April 24th, and on April 30th, the federal court entered a default judgment against Agra USA.

Plaintiff commenced this action by motion for summary judgment in lieu of complaint pursuant to CPLR 3213. The court denied the motion, noting, inter alia, that a showing of collusion would invalidate the very existence of any "obligation" owing under the guarantee.

I am compelled to agree. If the judgment was obtained as a result of collusion, it cannot constitute a valid "obligation" of Agra USA covered by the terms of the guarantee (*see Canterbury Realty & Equip. Corp. v Poughkeepsie Sav. Bank*, 135 AD2d 102, 107 [3d Dept 1988]).

A lawsuit is collusive where it is "not in any real sense adversary" (*United States v Johnson*, 319 US 302, 305 [1943] [case brought at defendant's behest and expense dismissed as collusive]). Defendant Herrera asserts that plaintiff exercised de facto and de jure control over Agra USA and therefore Agra USA was in no position to contest the entry of the default judgment. As discussed above, in the wake of Guzman's fraud, in January 2012, plaintiff obtained control over Agra Canada, the parent corporation of Agra USA, and placed it into receivership. The receiver and trustee of Agra Canada, Deloitte & Touche, was represented by plaintiff's own lawyers, Haynes and Boone. Through Deloitte, plaintiff asserted de facto control over Agra USA as early as February 2012, when it took steps to secure its assets.

Plaintiff argues that Herrera, who remained a director until

---

**3.** Because plaintiff sought entry of a default judgment as to only one of the named defendants, it could not obtain a default judgment from the clerk but was required to file a motion. Insofar as the federal court lacked subject matter jurisdiction over an action by a Dutch plaintiff against two Mexican citizens (Guzman and Herrera), plaintiff, on April 19, 2012, filed a notice of voluntary dismissal of the complaint as against Guzman and Herrera.

April 11, 2012, could have opposed entry of the default judgment on behalf of Agra USA, and thus, cannot assert that the federal judgment was obtained by collusion.

This argument misses the mark. To begin with, although plaintiff requested that the clerk "enter" a default on April 3, 2012 (which, incidentally, was little over a week before Herrera's removal), it is undisputed that no such judgment was entered on that date and that plaintiff was directed to move, via formal motion, for entry of a default judgment against Agra USA, which it did by order to show cause dated April 16, 2012, five days after Herrera's removal. The actual judgment of default was not entered until April 30, 2012.

Plaintiff's argument, moreover, ignores the evidence of plaintiff's de facto control of Agra USA prior to Herrera's removal. Due to the accelerated nature of this proceeding under CPLR 3213, there has been no discovery. In all likelihood, discovery will reveal additional evidence as to the extent of the authority exercised by plaintiff over Agra USA.

Furthermore, once Beggs was installed by Deloitte on April 11th—at which time even the majority agrees Herrera was without any power to act on behalf of Agra USA—Agra USA lost the ability to make a motion to set aside the default judgment.

Plaintiff is entitled to recover on the guarantee only if it meets its prima facie burden of establishing that the guarantee by its terms is applicable. The waiver of defenses provision cannot confer on plaintiff the absolute right to recover what it has unilaterally deemed to be an "obligation," if in fact no such obligation exists.

As defendant Herrera notes, he does not raise a defense to the enforcement of the guarantee. He does not assert that the guarantee was procured by fraud or otherwise challenge its terms; rather, he asks that the guarantee be enforced in accordance with its terms, i.e., that he agreed to guarantee only "obligations" of Agra USA. The majority's reliance on *Citibank v Plapinger* (66 NY2d 90 [1985]), which stands for the proposition that fraud in the inducement is not a defense to the enforcement of an unconditional guarantee, is thus misplaced.

This case, rather, is akin to *Canterbury Realty & Equip. Corp. v Poughkeepsie Sav. Bank* (135 AD2d 102 [3d Dept 1988]). In *Canterbury*, the liability of the guarantors was "intertwined with and predicated" upon whether the defendant bank had a right to accelerate the underlying indebtedness against the plaintiff, whose liability on a revolving loan the guarantors had absolutely and unconditionally agreed to guarantee (*id.* at 106).

The Third Department reasoned that the unconditional guarantees did not "preclude[ ] each of the guarantors from holding the Bank to the terms of th[e] instrument itself, regarding the triggering events" permitting the bank to accelerate the loan (*id.*). Because issues of fact existed as to whether the bank had "unfairly brought about the occurrence of the very condition precedent [i.e., the plaintiff's suspension of business] upon which it relied to accelerate the loan against the guarantors," the appellate court held that the motion court had correctly denied the bank's motion for summary judgment on its counterclaims seeking to enforce the guarantees (*id.* at 107).

Similarly, in *Barclays Bank of N.Y. v Heady Elec. Co.* (174 AD2d 963 [3d Dept 1991]), a case involving defendants who executed a secured note and guarantees in respect of an underlying debt, the appellate court held that a trial was necessary because "th[e] proof sufficiently raised questions of fact concerning the reasonableness of plaintiff's declaration of default" in connection with the underlying loan transaction (*id.* at 967; *see also Manufacturers & Traders Trust Co. v Sullivan*, 188 AD2d 1023, 1023 [4th Dept 1992] [reversal of judgment warranted due to the existence of factual issues as to "whether plaintiff interfered with or prevented the occurrence of conditions which would have terminated defendants' liability under the guaranties and whether, as a result, defendants are relieved of their obligations under those guaranties"]).[4]

The majority's attempts to distinguish *Canterbury* are entirely unavailing. *Canterbury* and its progeny stand for the proposition that a party seeking to enforce a guarantee cannot wrongfully cause a default or the occurrence of some other condition precedent that will have the effect of triggering the guarantee it is seeking to enforce. Plaintiff is alleged to have engineered the entry of a default judgment in the federal action on the underlying receivables purchases agreement expressly for the purpose of triggering an "obligation" under section 1 (b) of Herrera's guarantee, executed in connection with that very same agreement. This case is therefore not in any meaningful way distinguishable from *Canterbury*.

Herrera seeks only to "hold the bank to the terms" of the guarantee. He obligated himself unconditionally to pay only the "obligations" of Agra USA. As in *Canterbury*, plaintiff's alleged

---

4. Compare *Red Tulip, LLC v Neiva* (44 AD3d 204 [1st Dept 2007], *lv dismissed* 10 NY3d 741 [2008]), upon which the majority relies, in which the record did not "support a finding that [plaintiff] wrongfully caused [defendant's] default or some other condition precedent that led to acceleration of the debt" (*id.* at 211).

wrongful conduct in procuring the default could potentially "serve to discharge the guarantors' obligation" (135 AD2d at 107). Plaintiff's argument that the waiver of defenses in the guarantee precludes Herrera from raising questions as to the collusive nature of the federal default judgment, i.e., from raising questions regarding the very "obligation" plaintiff seeks to enforce, is without merit.