This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------------

No. 54
Cooperatieve Centrale
Raiffeisen-Boerenleenbank, B.A.,
&c.,
                Respondent,
          v.
Francisco Javier Herrera Navarro,
                Appellant,
The Estate of Eduardo Guzman
Solis,
                Defendant.


             T. Barry Kingham, for appellant.
             Jonathan D. Pressment, for respondent.


RIVERA, J.:

          On this appeal, defendant guarantor seeks to avoid

liability as provided under an "unconditional and absolute"

guaranty in favor of plaintiff, on grounds that the default

- 1 -

judgment against him, which constitutes the subject underlying debt, was obtained by plaintiff's collusion.  We conclude the Appellate Division properly held that plaintiff's collusion claim constitutes a defense, barred by the express language of the guaranty, and, in any event, that his claim of collusion is contradicted by the record.  Therefore, we affirm.

## I.

Defendant Francisco Herrera Navarro was a Chief Executive Officer and director of now bankrupt Agra Services of Canada, Inc. (Agra Canada), and an officer and director of Agra USA.  Agra Canada was a Canadian corporation which traded physical agricultural commodities between Canada and Mexico. Agra Canada was also the sole shareholder of Agra USA.  This appeal involves defendant's liability under a personal guaranty for a debt arising from litigation which can be traced back to payments made for fictitious business transactions attributed to Agra Canada.

According to the undisputed facts, Agra Canada entered a purchase agreement with plaintiff Cooperatieve Centrale Raiffeisen-Boerenleenbank B.A.(Rabobank), under which Rabobank purchased and financed certain receivables of Agra Canada (the "Purchase Agreement").  Specifically, Rabobank made regularly scheduled payments to purchase any indebtedness or obligations owed to Agra Canada arising from the sale of its goods to its

importers.

A year after execution of the Purchase Agreement defendant and Eduardo Guzman Solis (Guzman Solis), President of Agra Canada and manager of both Agra businesses, signed separate, individual and identical personal guarantees in favor of Rabobank (the "Guaranty").  Pursuant to sections 1(a), defendant guaranteed all obligations and liabilities of Agra Canada arising and outstanding under the Purchase Agreement, not covered by insurance, and further guaranteed under section (1)(b), all obligations and liabilities of Agra USA to Rabobank "now or hereafter existing, including without limitation . . . principal, interest, fees, expenses, or otherwise."

Liability under the Guaranty is "absolute and unconditional" as provided in section 2, which states

> "SECTION 2.  Guaranty Absolute. The Guarantor guarantees that the obligations will be paid strictly in accordance with the terms of the applicable agreements, notes or other instruments under which the Obligation arise, regardless of any law, regulation or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of the Purchaser with respect thereto.  The liability of the Guarantor under this Guaranty shall be absolute and unconditional irrespective:
>
> > "(i) any lack of validity or enforceability of any such agreement, note or other instrument;
> >
> > "(ii) any change in the time, manner or place of payment of, or in any other term of, all or any of the Obligations, or any

other amendment or waiver of or any consent to departure from any such agreement, note or other instrument;

"(iii) any exchange, release or non-perfection of any collateral, or any release or amendment or waiver of or consent to departure from any other guaranty, for all or any of the Obligations; or

"(iv) any other circumstance which might otherwise constitute a defense available to, or a discharge of, the Seller or a guarantor.

"This Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time any payment of any of the Obligations is rescinded or must otherwise be returned by the Purchaser upon the insolvency, bankruptcy, or reorganization of the Seller or otherwise, all as though such payment had not been made"

Two years after the execution of their respective guarantees, Guzman Solis died, which precipitated Rabobank's discovery of millions of dollars due from Agra Canada under the Purchase Agreement. Defendant's subsequent investigation into Rabobank's payment demands revealed fraudulent receivables based on nonexistent transactions submitted by Guzman Solis. Defendant claims to have no knowledge or involvement regarding this scheme to defraud Rabobank.

Rabobank successfully petitioned for an order instituting bankruptcy proceedings against Agra Canada in a Canadian bankruptcy court. Thereafter, the bankruptcy court

appointed Deloitte & Touche, Inc. as receiver and trustee of Agra Canada.

The following month, on March 2, 2012, Rabobank commenced an action in the United States District Court for the Southern District of New York, against defendant, Agra Canada, Agra USA, and the estate of Guzman Solis seeking to recover the millions owed Rabobank under the Purchase Agreement and the guarantees. Defendant appeared represented by counsel he retained for his own behalf, but failed to retain counsel for Agra USA. Upon Agra USA's failure to answer or otherwise respond, on April 3, 2012, Rabobank secured from the Clerk of the Court a Certificate of Default against Agra USA, in accordance with Federal Rule of Civil Procedure 55 (a).[1]

On April 11, 2012, Agra Canada removed all officers and directors of Agra USA, including defendant, and elected and installed a Deloitte & Touche representative as president and sole officer and director. Then, on April 16, 2012, Rabobank filed an order to show cause for entry of default judgment against Agra USA, pursuant to Federal Rule of Civil Procedure 55(b)(2),[2] which the District Court ultimately entered and filed

---

[1]Federal Rule of Civil Procedure 55 (a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."

[2]Federal Rule of Civil Procedure 55 (b) (2) requires the party seeking entry of summary judgment to apply directly to the

on April 30, 2012, awarding Rabobank $41,991,980.[3]  In the interim, on April 19, 2012, Rabobank voluntarily discontinued without prejudice its action against defendant, pursuant to Federal Rule of Civil Procedure 41 (a) (1) (A) (i).[4]

The same day that the Southern District Court entered the default judgment Rabobank filed the underlying action in state court, by summons and accompanying motion for summary judgment in lieu of complaint pursuant to CPLR 3213.  Rabobank alleged defendant was liable under the Guaranty, section 1 (a), for the outstanding millions owed it under the Purchase Agreement, and, alternatively, under section 1(b), based on the federal default judgment.

Defendant opposed the motion, arguing that Guzman Solis fraudulently obtained payments from Rabobank by way of his exclusive control over Agra Canada's business activities, and that the Guaranty did not encompass fraudulent transactions -- only "uninsured outstanding sums on the 'accounts receivable.'" Defendant contended that "accounts receivable" represent sums

---

court in cases not involving a sum certain or one made certain by computation.

[3] In October 2013, Rabobank also obtained a default judgment on the entire amount against the estate of Guzman Solis.

[4] Federal Rule of Civil Procedure 41 provides for the voluntary dismissal of an action by the plaintiff, without a court order, upon the filing "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment" (Fed Rules Civ Pro rule 41 [a] [1] [A] [i]).

owed on an actual sale, and since the accounts receivable are fictitious, "there are no sales that actually give rise to any sum 'owed on said account receivable' as defined in the [Purchase] Agreement."

Supreme Court denied Rabobank's motion.  The court held that questions of fact as to the existence of actual "receivables" precluded summary judgment based on section 1 (a) of the Guaranty.  The court further concluded that summary judgment was not proper based on section 1 (b) because issues of fact existed as to who controlled Agra USA during the course of the Southern District action, at the time of default and when judgment was entered.

In a split decision, the Appellate Division reversed Supreme Court and granted Rabobank summary judgment (Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A. v Navarro, 113 AD3d 457 [1st Dept 2014]).  The majority concluded that the Guaranty's waiver provision precluded defenses as to the existence of an enforceable "obligation," including defendant's assertion of plaintiff's collusion (id. at 459).  The majority held that the collusion claim was, in fact, a defense and not, as defendant and the dissent argued, a condition precedent (id. at 459-60, citing 23 N.Y. Jur 2d, Contribution, Indemnity, and Subrogation § 155 [in indemnity context, noting that an indemnitor "may always set up the defense that the judgment in the prior action against the indemnitee was procured by collusion or fraud"]).  The two

justices in dissent, relying on <u>Canterbury Realty and Equip.</u>
<u>Corp. v Poughkeepsie Sav. Bank</u> (135 AD2d 102 [3d Dept 1988]),
determined that "[i]f the judgment was obtained as a result of
collusion, it cannot constitute a valid 'obligation' of Agra USA
covered by the terms of the guarantee [<u>sic</u>]" (<u>Cooperatieve</u>, 113
AD3d at 463).

On appeal to this Court, defendant does not challenge
the validity of the Guaranty or non-payment of the obligations
covered by the Guaranty and Purchase Agreement.  Instead, he
challenges whether a valid underlying debt exists, which he
argues presents a question as to whether plaintiff met its
summary judgment burden by establishing, as a condition
precedent, an obligation that is owed and due.  In support of his
position, defendant avers that the alleged "obligation" here is a
default judgment obtained through collusion.

Rabobank contends that defendant's argument that the
federal judgment fails to qualify as a "valid obligation" is, in
reality, a defense that defendant expressly waived under the
Guaranty.  Rabobank also challenges defendant's collusion
argument as "a baseless conspiracy theory," and argues that
defendant was a party to the federal lawsuit but simply failed to
act to protect his personal interest, or that of Agra USA.

II.

Pursuant to CPLR 3213, "[w]hen an action is based upon

an instrument for the payment of money only or upon any judgment, the plaintiff may serve with the summons a notice of motion for summary judgment and the supporting papers in lieu of a complaint."  CPLR 3213 was enacted "to provide quick relief on documentary claims so presumptively meritorious that a formal complaint is superfluous, and even the delay incident upon waiting for an answer and then moving for summary judgment is needless" (see Weissman v Sinorm Deli, Inc., 88 NY2d 437, 443 [1996]).  An unconditional guaranty is an instrument for the payment of "money only" within the meaning of CPLR 3213 (European Am. Bank & Trust Co. v Schirripa, 108 AD2d 684 [1st Dept 1985], citing Manufacturers Hanover Trust Co. v Green, 95 AD2d 737 [1st Dept 1983]).

To meet its prima facie burden on its summary judgment motion, Rabobank must prove "the existence of the guaranty, the underlying debt and the guarantor's failure to perform under the guaranty" (see Davimos v Halle, 35 AD3d 270, 272 [1st Dept 2006], citing City of New York v Clarose Cinema Corp., 256 AD2d 69, 71 [1st Dept 1998]).  Thereafter, "the burden shifts to the defendant to establish, by admissible evidence, the existence of a triable issue with respect to a bona fide defense" (Cutter Bayview Cleaners, Inc. v Spotless Shirts, Inc., 57 AD3d 708, 710 [2d Dept 2008] [internal citation and quotation marks omitted]). Here, Rabobank submitted a copy of the Purchase Agreement, the Guaranty signed by defendant, as well as proof of receivables due

pursuant to the Purchase Agreement, and the federal default judgment entered against Agra USA.  Defendant objected, claiming triable issues of fact exist as to the applicability of the Guaranty.  Thus, resolution of this appeal requires determination of whether defendant's challenge to Rabobank's demand for summary judgment is foreclosed by the Guaranty.  If it is, then on this record, summary judgment was properly granted to Rabobank.

We agree with Rabobank that defendant's challenge constitutes a defense precluded by the Guaranty and, on the facts of this case and the record presented, his allegations of collusion cannot overcome his "absolute and unconditional" liability.  We therefore affirm the Appellate Division.


III.

A guaranty is a promise to fulfill the obligations of another party, and is subject "to ordinary principles of contract construction" (Compagnie Financiere de CIC et de L'Union Europeenne v Merrill Lynch, Pierce, Fenner & Smith Inc., 188 F3d 31, 34 [2d Cir 1999], citing Banco Portugues do Atlantico v Asland, S.A., 745 F Supp 962, 967 [SDNY 1990], and People v Stuyvesant Ins. Co., 98 Misc 2d 210, 213 [Sup Ct 1979], and 63 N.Y. Jur. 2d Guaranty and Suretyship §§ 2, 89).  Under those principles, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (Greenfield v Philles Records, Inc., 98

NY2d 562, 569 [2002]).

Guarantees that contain language obligating the guarantor to payment without recourse to any defenses or counterclaims, i.e., guarantees that are "absolute and unconditional," have been consistently upheld by New York courts (see Citibank, N.A. v Plapinger, 66 NY2d 90 [1985]; Chemical Bank v Sepler, 60 NY2d 289 [1983]; Federal Deposit Ins. Corp. v Schwartz, 78 AD2d 867 [2d Dept 1980], affd 55 NY2d 702 [1981]; see also First New York Bank for Bus. v DeMarco, 130 BR 650, 654 [SDNY 1991]). "Absolute and unconditional guaranties have in fact been found to preclude guarantors from asserting a broad range of defenses . . ." (Compagnie, 188 F3d at 35; see United Orient Bank v Lee, 223 AD2d 500 [1st Dept 1996] [where guarantees contained waivers of all defenses other than payment, defendants precluded from asserting claims of release]; Gannett Co., Inc. v Tesler, 177 AD2d 353, 353 [1st Dept 1991] [defendant precluded from asserting any defenses or counterclaims, including "discharge and release"]; see also American Trading Co., Inc. v Fish, 42 NY2d 20, 26 [1977] [guarantor may not raise as a defense the expiration of the statute of limitations against the primary obligor]; Walcutt v Clevite Corp., 13 NY2d 48, 55 [1963] [guarantor may not raise as counterclaims or defenses those claims belonging to the principal obligor]).

This Court has acknowledged the application of these absolute guarantees even to claims of fraudulent inducement in

the execution of the guaranty, as illustrated by the holding in
Citibank, N.A. v Plapinger (66 NY2d 90 [1985]).  In that case,
defendants were officers, directors and shareholders in a company
which secured a line of credit from plaintiff banks.  After the
company defaulted, it restructured its debt as a term loan,
guaranteed by defendants.  When the company subsequently filed
for bankruptcy, the banks declared the term loan and interest
immediately due, and sued defendants on the guaranty.  Among
their defenses to the litigation, defendants asserted fraud in
the inducement, based on alleged false or recklessly made
statements of the banks that they would provide the company with
an additional line of credit as part of the debt restructuring.
Defendants argued that but for verbal assurances that the banks
would issue the credit, defendants would not have signed the
guaranty on the term loan.

The Court held that under the "absolute and
unconditional" language of the guaranty, defendants were
foreclosed from asserting their fraud in the inducement defense.
In reaching this conclusion the Court rejected the need for
defendants' specific disclaimer of reliance on the banks' oral
representations.  Instead, the Court determined, quoting from the
guaranty, that defendants agreed "that the 'absolute and
unconditional' nature of their guarantee [sic] was 'irrespective
of (i) any lack of validity . . . of the [] Loan Agreement ... or
any other agreement or instrument relating thereto,' or '(vii)

any other circumstance which might otherwise constitute a defense' to the guarantee [sic]" (Plapinger, 66 NY2d at 95). Given the substance of the guaranty, to permit defendants to assert that the Bank induced them to sign "would in effect condone defendants' own fraud in 'deliberately misrepresenting [their] true intention' (Danann Realty Corp. v Harris, 5 NY2d 317, 323 [1959]) when putting their signatures to their 'absolute and unconditional' guarantee [sic]'" (Plapinger, 66 NY2d at 95). In other words, because defendants had assured the banks that their guaranty to pay the loan was not subject to any defenses, they were bound to their promise.

Here, defendant personally guaranteed the obligations owed by Agra Canada under the Purchase Agreement, as well as obligations owed by Agra USA. Moreover, defendant specifically agreed that his "liability under this Guaranty shall be absolute and unconditional irrespective of (1) any lack of validity or enforceability of the agreement; . . . or (iv) any other circumstance which might otherwise constitute a defense available to, or a discharge of, the Seller (Agra Canada) or a guarantor."

By its plain terms, in broad, sweeping and unequivocal language, the Guaranty forecloses any challenge to the enforceability and validity of the documents which establish defendant's liability for payments arising under the Purchase Agreement, as well as to any other possible defense to his liability for the obligations of the Agra businesses. Indeed,

this is the same language which foreclosed the defendants fraud in the inducement defense in <u>Plapinger</u> (see <u>id.</u>).

Defendant seeks to avoid the application of the Guaranty, and our holding in <u>Plapinger</u>, by arguing that Rabobank failed to satisfy its summary judgment burden because a question of material fact exists regarding whether the federal default judgment constitutes an obligation covered by the Guaranty. It is true that a guarantor is only liable upon the noncompliance of the principal obligor (see <u>Madison Ave. Leasehold, LLC v Madison Bentley Assoc. LLC</u>, 30 AD3d 1, 10 [1st Dept 2006] <u>affd</u> 8 NY3d 59 [2006], citing <u>Brewster Tr. Mix Corp. v McLean</u>, 169 AD2d 1036, 1037 [3d Dept 1991], and <u>General Phoenix Corp. v Cabot</u>, 300 NY 87, 95 [1949]). However, defendant does not contest Agra Canada's failure to comply with the terms of the Purchase Agreement. Indeed, he would be hard-pressed to make such an argument because his own investigation affirmed Rabobank's assertions that Guzman Solis submitted fraudulent transactions in exchange for advances on nonexistent receivables.

Instead, defendant argues that the federal default judgment cannot serve as a debt for which he is liable under the Guaranty because the judgment is unlawful, having been obtained by collusion, through Rabobank's control over Agra USA. Defendant goes further and contends that the existence of a valid underlying debt is a condition precedent to recovery on the Guaranty. We are unpersuaded by defendant's variations on the

same theme that he does not owe Rabobank, because no matter how defendant characterizes his challenge, it is ultimately based on a quintessential defense of fraud. As such, he remains subject to his agreed upon absolute and unconditional liability because he claims a "circumstance which might otherwise constitute a defense available to ... the guarantor", barred under Section 2 (iv) (see 23 N.Y. Jur. 2d Contribution, Etc. § 155 ["indemnitor may always set up the defense that the judgment in the prior action against the indemnitee was procured by collusion or fraud]; see also Plapinger, 66 NY2d at 92). Were we to accept defendant's argument, we would ignore this Court's admonition in Plapinger, and "in effect condone defendant['s] own fraud in 'deliberately misrepresenting [his] true intention' [] when putting [his] signature[] to [his] 'absolute and unconditional' guarant[y]" (id. at 95).

Defendant, and the dissent below, rely on Canterbury Realty and Equip. Corp. v Poughkeepsie Sav. Bank (135 AD2d 102 [3d Dept 1988]), to establish, in essence, a categorical exception for collusion claims from the absolute liability provision of the Guaranty at issue here. However, such a per se rule is contrary to the Plapinger Court's holding that a guarantor cannot seek to benefit from the guarantor's own fraudulent promise that the guaranty is "absolute and unconditional." In any case, the Third Department's holding in Canterbury is more narrow than defendant contends, and does not

support the expansive proposition he promotes on this appeal.

In Canterbury, plaintiff corporation, Canterbury, secured financing and a line of credit from defendant Bank. Certain corporate officers and shareholders signed instruments that "irrevocably and unconditionally guaranteed . . . payment when due . . . of any and all liabilities of [Canterbury] to the Bank."  After initially increasing the credit line, the Bank informed Canterbury that it would no longer honor checks drawn against the line of credit, including any that were then outstanding.  The Bank also retained Canterbury's accounts receivable.  When Canterbury was unable to meet its costs and immediately ceased operating, the Bank accelerated the debt. Canterbury filed suit and the Bank answered and counterclaimed against the individuals based on their personal guarantees.  In affirming the denial of the Bank's summary judgment motion on its counterclaims, the Appellate Division distinguished Plapinger, finding this Court's decision was based upon claimed misrepresentations inconsistent with the express terms of the unconditional guaranty and the guarantor's own representations, whereas in Canterbury the guarantor argued that the bank caused the event that led to the guarantor's liability.  Thus, Canterbury stands for the proposition that an absolute and unconditional guaranty does not foreclose a guarantor's challenge that the creditor's wrongful post-execution conduct triggered the event that accelerates or causes the guarantor's liability.

Here, defendant does not contend that Rabobank's conduct led to the fraudulent transactions -- those were designed by Guzman Solis, and defendant makes no claim of collusion between Guzman Solis and Rabobank.  Defendant does not argue that the violation of the obligations were caused, expedited, or otherwise facilitated by Rabobank as part of a collusive effort to cash in on the Guaranty.  Instead, defendant claims that Rabobank has failed to establish obligations owed by him under the Guaranty because Rabobank's default judgment was secured through collusion facilitated by Rabobank's control over Agra Canada.  That argument is a defense waived under the broad, inclusive, in no way limited, language of subparagraph (iv) of the Guaranty.

We note that, in the same vein as the holding in Canterbury, there is federal case law that suggests that there may be certain fraudulent conduct that falls outside the scope of an unconditional and absolute guaranty.  For example, the Second Circuit has remarked, without deciding, such a case may exist where a debtor and a creditor have colluded to obtain payments from the guarantor, while at the same time increasing the risk that the guarantor cannot recover from the original borrower (see Compagnie, 188 F3d at 37-38 [Sotomayor, J.]).  On this appeal, given that defendant's own actions undermine his collusion claim, we need not decide whether certain conduct by a creditor and/or debtor may be of such character, and so impacts the guarantor's

position, that the guarantor may challenge these acts notwithstanding our prior holding in Plapinger.

Here, defendant concedes that when Rabobank filed its federal action, he was the sole officer and director of Agra USA. Yet defendant failed to obtain counsel for Agra to respond to the federal suit, while obtaining counsel to respond on his behalf as a named defendant in his individual capacity. Thus, defendant's "collusion" defense is meritless.

We further note that defendant is not unfamiliar with the world of commercial dealings. As the record establishes, he is a certified public accountant and business advisor, who served as a director of Agra Canada and Agra USA, and Chief Executive Officer of Agra Canada. He is no neophyte. Rather, he is a sophisticated business person, who was free to negotiate for protection against the very acts he claims should bar Rabobank's alleged conduct (see e.g. Quadrant Structured Products Co., Ltd. v Vertin, 23 NY3d 549, 568 [2014] [sophisticated parties, especially, are charged with knowledge of the surrounding law and the consequences of the agreements they freely negotiate and assent to]). Defendant failed to do so, and he now cannot seek to escape liability under the Guaranty.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Order affirmed, with costs.  Opinion by Judge Rivera.  Chief
Judge Lippman and Judges Read, Pigott, Abdus-Salaam, Stein and
Fahey concur.


Decided June 9, 2015