■ PDL BIOPHARMA, INC., Respondent, v SAMUEL J. WOHL-STADTER et al., Appellants. [47 NYS3d 25]—

Order, Supreme Court, New York County (Eileen Bransten, J.), entered July 29, 2016, which granted plaintiff's motion for summary judgment in lieu of complaint on liability pursuant to CPLR 3213 and denied, defendants' cross motion for summary judgment, unanimously modified, on the law, plaintiff's CPLR 3213 motion denied, and the matter remanded to be converted to a plenary action, and otherwise affirmed, without costs.

The issue to be addressed at this juncture is not whether the subject guaranties are or are not enforceable; it is solely whether the guaranties are entitled to the expedited treatment of CPLR 3213. We hold that the guaranties on which plaintiff seeks summary judgment in lieu of complaint do not qualify as instruments for the payment of money only.

"The prototypical example of an instrument within the ambit of [CPLR 3213] is of course a negotiable instrument for the payment of money—an unconditional promise to pay a sum certain, signed by the maker and due on demand or at a definite time" (*Weissman v Sinorm Deli*, 88 NY2d 437, 444 [1996]). CPLR 3213 is generally used to enforce "some variety of commercial paper in which the party to be charged has formally and explicitly acknowledged an indebtedness," so that "a prima facie case would be made out by the instrument and a failure to make the payments called for by its terms" (*Interman*

*Indus. Prods. v R. S. M. Electron Power*, 37 NY2d 151, 154-155 [1975]). A document does not qualify for CPLR 3213 treatment if the court must consult other materials besides the bare document and proof of nonpayment, or if it must make a more than de minimis deviation from the face of the document (*id.*).

Defendants Samuel Wohlstadter and Nadine Wohlstadter own nonparty Wellstat Diagnostics, LLC (Diagnostics), the diagnostic systems company that received the loan underlying the guaranties at issue in this motion. On November 2, 2012, Diagnostics borrowed $40 million from plaintiff PDL Biopharma to finance certain FDA development trials. The terms of the loan were memorialized in a Credit Agreement, a term note, a security agreement, and a patent security agreement, all dated November 2, 2012. Thereafter, following a default, PDL, Diagnostics and the Wohlstadters entered into a Forbearance Agreement dated February 28, 2013. The two guaranties that accompanied this Forbearance Agreement, one executed by the Wohlstadters, the other by the remaining defendants (entities owned by the Wohlstadters), are the subject of the present motion.

It is true that generally, an unconditional guaranty qualifies as an instrument amenable to CPLR 3213 treatment (*Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A., "Rabobank Intl.," N.Y. Branch v Navarro*, 25 NY3d 485, 492 [2015]). However, here, it is unclear whether that is the case. For one thing, the documents guarantee not only "payment" but also "performance" of the borrower's "obligations." The term "obligations" is not defined in either of the guaranties, although it is defined in the Credit Agreement as "all liabilities, indebtedness and obligations (including interest accrued at the rate provided in the applicable Loan Document after the commencement of a bankruptcy proceeding whether or not a claim for such interest is allowed) of any Loan Party under this Agreement, or the [Wohlstadters] or any Loan Party under any other Loan Document, any Collateral Document or any other document or instrument executed in connection herewith or therewith, in each case howsoever created, arising or evidenced, whether direct or indirect, absolute or contingent, now or hereafter existing, or due or to become due, including the Applicable IRR Amount." Notably, in addition, in the note documents, Diagnostics, as the borrower, warranted to provide certain information to PDL, including annual and quarterly reports "until all obligations . . . are paid in full."

The guaranties at issue also include a provision that "[u]nless new [l]oan [d]ocuments become effective under Section 21

of the Forbearance Agreement, the guarantee contained in this Section 2 shall remain in full force and effect until all the [o]bligations shall have been [f]ully [s]atisfied." This provision may be interpreted to mean that if new loan documents are entered into, the referred-to guaranties would no longer remain in full force and effect. Since PDL and Diagnostics entered into an Amended and Restated Credit Agreement on August 15, 2013, there is a question as to whether the guaranties remain in effect at this time.

Moreover, we note that determination of preliminary legal issues, and reference to additional documents, was necessary before the motion court could address the question of whether the relied-on guaranties continued to be enforceable and whether they had come due. For instance, it was necessary for the motion court to construe the documents to decide whether the cash contribution required under the Amended and Restated Credit Agreement could be satisfied by the loan defendants obtained from White Oak, or whether the use of the loan funds constituted a default under that Agreement, and if so whether PDL accepted tender of that payment as performance of defendants' contractual obligation. The motion court also had to construe the Forbearance Agreement and refer to the Restated Credit Agreement to determine that the guaranties remained effective despite the execution of new loan documents. Similarly, the motion court had to refer to the Joinder Agreement to establish some defendants' purported awareness that the guaranties continued to be in effect. This extent of reference to extrinsic evidence exceeds any permissible limited reference to outside sources allowable under CPLR 3213.

Given the foregoing necessity of considering the parties' complex arrangements, agreements and circumstances, and the inability to determine by simple reference to the guaranties whether defendants remained liable by their terms to pay a sum certain, plaintiff's motion must be denied. Once issue is joined and any appropriate discovery is conducted, it will be appropriate to address the questions of whether issues of fact exist which preclude summary judgment. Concur—Friedman, J.P., Renwick, Saxe and Gische, JJ.