NY 2015 Boat LLC v Shapiro (2025 NY Slip Op 00275)

NY 2015 Boat LLC v Shapiro

2025 NY Slip Op 00275

Decided on January 16, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: January 16, 2025

Before: Webber, J.P., Gesmer, Shulman, Pitt-Burke, Higgitt, JJ. 

Index No. 806264/22 Appeal No. 3518-3519-3520 Case No. 2023-06530, 2024-02311, 2024-02630 

[*1]NY 2015 Boat LLC, Plaintiff-Respondent,
v
Eric Shapiro, et al., Defendants-Appellants, 2435 Kingsland LLC, City of New York Department of Finance, et al., Defendants. 

Kasowitz Benson Torres LLP, New York (Joshua Marks of counsel), for appellants.
Richland & Falkowski, PLLC, Washingtonville (Daniel H. Richland of counsel), for respondent.

Judgment, Supreme Court, Bronx County (Fidel E. Gomez, J.), entered April 16, 2024, awarding plaintiff $365,884.84, granting plaintiff's motion for a judgment of foreclosure and sale, directing the sale of the mortgaged premises located at 2435 Kingsland Avenue, Bronx, New York, and adjudging defendants liable for any amounts unsatisfied after the sale of the mortgaged premises, and bringing up for review an order, same court and Justice, entered November 6, 2023, which granted plaintiff's motion for summary judgment, and an order, same court and Justice, entered on or about February 26, 2024, which, to the extent appealed from as limited by the briefs, upon reargument, adhered to its prior determination, unanimously reversed, on the law, without costs, the judgment vacated and the matter remanded for further proceedings consistent with this decision. Appeals from the aforementioned orders, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.
Defendants Eric and Steven Shapiro grew up at 2435 Kingsland Avenue, Bronx, New York (the House) and Steven has lived there all his life. They have owned the House since they inherited it from their father. In early 2020, they sought a loan to make repairs on the House and to pay off property taxes and other debts and judgments. After being denied loans from banks due to their limited income and poor credit, Eric contacted a broker, Larry Jonathan, whom Eric found through an online ad. Jonathan advised Eric that he worked with lenders who could provide them with a loan but at a higher-than-normal interest rate.
Approximately 10 days before the closing, Jonathan sent Eric 18 documents, which included, in addition to a note and mortgage, a deed that the Shapiros were to sign to an entity called 2435 Kingsland LLC (Kingsland), one of the defendants in this action, and a personal guaranty. Steven was also sent some of the documents, and he signed them and sent them to Martin Braunschweig, Esq. a lawyer provided by plaintiff to represent them at the closing. Kingsland, not the Shapiros, was listed as the borrower. Neither Eric nor Steven had ever heard of Kingsland, and when Eric asked Jonathan why Kingsland was listed as the borrower, Jonathan responded that the lender would only make commercial loans. Eric learned only after the closing that Kingsland had been created in May 2020, without the defendants' knowledge or consent.
The closing was scheduled for February 11, 2021. Steven requested that the closing be delayed since he had COVID. Plaintiff refused to adjourn the closing. Only Eric was able to attend the closing, where he met for the first time Braunschweig, whom he was told would represent the Shapiros. Braunschweig did not review the loan documents with Eric. Braunschweig did, however, advise Eric to sign the documents, which Eric did. At the closing, Braunschweig also notarized the documents which Steven had sent him, including the guaranty and the deed transferring title [*2]of the house to Kingsland, even though he had not been present when Steven signed them and had not even met Steven at the time.
The note, which identified plaintiff, NY 2015 Boat LLC, as the lender, provided for an interest rate of 12%, as well as an exit fee amounting to $7,500. The guaranty provided, in relevant part, that "the obligations of the Guarantor hereunder shall not be affected, modified, released or impaired by the invalidity, irregularity, illegality or unenforceability of, or any defect in, the Loan Documents," and contained a "no waiver or set off" clause precluding "any defense of any kind" to the Guarantor's obligation "in respect of any matter arising out of this Guaranty, except payment in full of all obligations. . .under the Loan Documents."
At the end of the closing, Eric received a breakdown of the loan funds' disbursement. Various fees, including $9,000 to plaintiff as a commitment fee and $4,250 to plaintiff's attorney, were deducted from the $300,000 the Shapiros were to receive, resulting in net proceeds of $250,750. From that $250,750, $3,000 was to be paid to Jonathan as a broker's fee, $750 to Braunschweig, and $143,307.96 to a title company retained to pay off the Shapiros' debts and judgments. Plaintiff disbursed the remaining $103,692.04 to an account opened in Kingsland's name. However, that account had been opened by Jonathan with his own social security number. As a result, the Shapiros could not access this account and did not receive these funds.
Under these circumstances presented, the borrower's status as an LLC did not bar the Shapiros' usury defense. Specifically, the circumstances surrounding the loan raise at least a question of fact as to whether plaintiff used the corporate form to conceal a usurious loan to the Shapiros (see Schneider v Phelps, 41 NY2d 238, 241-242 [1977]). Moreover, questions exist as to whether the loan was, in fact, usurious, exceeding New York's 16% maximum interest rate (General Obligations Law § 5-501; Banking Law § 14-a). Specifically, whether the deductions of a $9,000 "Commitment Fee," the $7,500 exit fee, and the $4,250 to be paid as a "Legal Lender Fee" constituted a discount that needed to be added to the 12% interest under the note, resulting in a 16.6% de facto interest rate (see Band Realty Co. v North Brewster, Inc., 37 NY2d 460, 464 [1975]).
The Shapiros also raised a question of fact as to whether plaintiff, through Jonathan as plaintiff's agent, fraudulently stated that the transaction needed to be structured as a commercial loan. Plaintiff largely does not contest the elements of fraud with respect to this contention (see First Nationwide Bank v 965 Amsterdam, 212 AD2d 469, 470-471 [1st Dept 1995]), asserting only that Jonathan, not plaintiff, is purported to have made the allegedly fraudulent statement. The Shapiros correctly argued before the motion court that summary judgment was premature because they needed discovery into the relationship between Jonathan [*3]and plaintiff, whether plaintiff knew that the House was residential and owner-occupied, and whether plaintiff's attorneys had knowledge of and facilitated the fraud on the Shapiros (see Aubrey Equities v SMZH 73rd Assoc., 212 AD2d 397, 398 [1st Dept 1995]). Any such evidence would have been peculiarly within plaintiff's knowledge (see International Trading & Sales v Philipp Bros., 99 AD2d 983, 984 [1st Dept 1984]). Similarly, there is a question as to whether Jonathan, in representing that the loan was for $300,000, rather than for that amount minus the roughly $103,000 the Shapiros could not access, made a statement as plaintiff's agent that was false when made (see Non-Linear Trading Co., Inc. v Braddis Assoc., 243 AD2d 107, 118 [1st Dept 1998]).
The Shapiros were entitled to raise their fraud and usury defenses, notwithstanding their failure to include these as affirmative defenses in their answer. Plaintiff does not contend that it was surprised, and it had a full opportunity to address the arguments in its reply papers in its original summary judgment motion (see Rogoff v San Juan Racing Assn, 54 NY2d 883, 885 [1981]).
The Shapiros were also entitled to raise these defenses despite the waiver language in the guaranty. While this language matches, in substance, the language found to have been preclusive of such defenses in Citibank v Plapinger (66 NY2d 90, 92, 95 [1985]) and in Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A., "Rabobank Intl.," N.Y. Branch v Navarro (25 NY3d 485, 493-494 [2015]), defendants have offered evidence, not only that they were unsophisticated, but that the transaction, about which the Shapiros knew nothing until shortly before the closing and which was structured by Jonathan, allegedly acting as plaintiff's agent, was designed to dress a consumer transaction as a commercial one. These circumstances are sufficiently far removed from those in Plapinger, Cooperatieve, and their progeny to preclude the application of those cases here.THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: January 16, 2025