CLNC 2019-FL1 Funding, LLC v Bennett (2025 NY Slip Op 06893)

CLNC 2019-FL1 Funding, LLC v Bennett

2025 NY Slip Op 06893

Decided on December 11, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 11, 2025

Before: Manzanet-Daniels, J.P., Gesmer, González, Shulman, O'Neill Levy, JJ. 

Index No. 651851/23|Appeal No. 5340|Case No. 2025-03501|

[*1]CLNC 2019-FL1 Funding, LLC, Plaintiff-Respondent,
v
William M. Bennett, Defendant-Appellant.

Bond, Schoeneck & King PLLC, New York (Mark A. Berman of counsel), for appellant.
McDermott Will & Schulte LLP, New York (Joel C. Haims of counsel), for respondent.

Order, Supreme Court, New York County (Joel M. Cohen, J.), entered on or about April 14, 2025, which granted plaintiff's motion for summary judgment, unanimously affirmed, with costs.
The court properly concluded that defendant failed to raise any issues of fact with respect to either of the two guaranties plaintiff seeks to enforce, the Cost Overruns Guaranty (COG) and the Equity Funding Guaranty (EFG). Guaranties like the one presented here, containing language obligating a guarantor to make payment without recourse to any defenses or counterclaims, have been routinely upheld and applied according to their express terms (see Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A., "Rabobank Intl.," N.Y. Branch v Navarro, 25 NY3d 485, 493 [2015]).
We reject defendant's contention that plaintiff's ability to fully recover under the guaranties was precluded by its purported consent, whether orally or through its inaction, to a pause in improvements to the subject project after the onset of the COVID-19 pandemic. The loan agreement and each guaranty contained language providing that modifications and waivers could only be effectuated through a signed writing, and no such writing exists here.
Defendant argues that his obligation to honor the COG was not triggered because, pursuant to Section 1.2.1 of that guaranty, he was only required to pay out-of-pocket costs when plaintiff performed the work that the borrower was otherwise required to perform. We disagree because Section 1.2.2 provided that, "[n]otwithstanding anything to the contrary contained herein . . . whether or not lender shall elect for completion of the required work as set forth above," plaintiff could require defendant to pay liquidated damages. The language of Section 1.2.2 overrode any inconsistent language contained in Section 1.2.1 and permits an award of liquidated damages even if plaintiff did not elect to complete the work.
We reject defendant's arguments that plaintiff impermissibly relied on the Equity Property Condition Assessment Report (PCA) to support its liquidated damages estimate. In setting out how liquidated damages were to be calculated, the COG permitted plaintiff to estimate the amount necessary to complete the work "in its sole, good faith discretion." Further, the PCA did not need to be authenticated as a business record because it was proffered not to establish the truth of its contents but rather to establish that plaintiff acted in good faith when it prepared its estimate (see One Step Up, Ltd. v Webster Bus. Credit Corp., 87 AD3d 1, 12 [1st Dept 2011]). The PCA was not an improper vehicle for making that showing because the COG did not identify any specific documentation plaintiff needed to rely on in arriving at its estimate. Moreover, the record establishes that plaintiff used the PCA as part of a good faith calculation of costs in conjunction with other documentation.
Defendant failed to establish that he is entitled to offsets that erase the debt under the EFG. Section 1.1(b) of the EFG provided that defendant's liability cap "shall be reduced dollar for dollar by the amount of . . . such Cap-Ex Project Partial Funding." The loan agreement defined the term "CapEx Project Partial Funding" as funds paid by the borrower towards "implementing and completing the work as set forth in the CapEx Project Budget," which was attached as a schedule to the loan agreement. Section 1.1(b) of the EFG did not authorize an offset of defendant's liability under the EFG through either the payment of principal or debt service or based on funding for the capital expenditure work that was never advanced.
Defendant's remaining arguments are similarly unavailing. First, we find that the motion court providently exercised its discretion in overlooking the failure to include a copy of the pleadings in plaintiff's initial summary judgment papers, particularly because plaintiff attached a copy in its reply papers and there has been no showing of prejudice (see Alpert v Moinian Group, 234 AD3d 648, 648 [1st Dept 2025]). Second, plaintiff did not need to establish that it had standing as a predicate to obtaining summary judgment, since defendant waived that defense by not raising it in his answer or in a pre-answer motion (Wells Fargo Bank Minn., N.A. v Mastropaolo, 42 AD3d 239, 242 [2d Dept 2007]). Finally, it is of no moment that plaintiff may not have properly authenticated the two letters demanding payment under the COG and the EFG. Plaintiff did not need to use those letters to establish that it made a written demand, particularly as defendant admitted that he received a written demand in his answer.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 11, 2025